THE STATE OF OHIO, APPELLEE, *v.* ROSS, APPELLANT.

(No. 72AP-229—Decided March 20, 1973.)

APPEAL: Court of Appeals for Franklin County.

*Mr. James J. Hughes, Jr.,* city attorney, *Mr. Daniel W. Johnson,* city prosecutor, and *Mr. Carl T. Wolfrom,* for appellee.

*Mr. R. Raymond Twohig, Jr.,* for appellant.

WHITESIDE, J. This is an appeal from a judgment of the Franklin County Municipal Court.

Defendant was arrested on May 25, 1971, during a disturbance at Linden-McKinley High School in Columbus, Ohio. Three affidavits were filed against defendant as an outgrowth of this incident: (1) that he wilfully obstructed,

impeded and hampered the lawful operations of the safety director of the city of Columbus at the scene of an emergency, in violation of R. C. 2923.43; (2) that he did, on May 25, 1971, upon being notified to depart from the premises of Linden-McKinley High School by a servant of said school, neglect and refuse to depart therefrom, in violation of R. C. 2909.21; and (3) that he, on the same date, did unlawfully assault Richard F. Dimel, in violation of R. C. 2901.25.

Defendant was originally represented by attorneys Bruce A. Campbell and William E. Boyland, and a pretrial was held on June 25, 1971. At this pretrial, motions filed by defendant were discussed and it was agreed that the case would not be assigned for trial until after the middle of September, 1971. The trial did not take place at that time and a second pretrial was held on March 10, 1972. At this time, R. Raymond Twohig, Jr., was added as one of the attorneys for defendant, and a motion was made to permit Mr. William Kunstler, an attorney in another state not admitted to practice in Ohio, to also appear on behalf of defendant, and also to permit the defendant to represent himself as co-counsel with the other counsel. Additional motions were also filed on behalf of defendant, and the case was set for trial on Monday, April 24, 1972. The motions to permit Mr. Kunstler to appear as one of the attorneys for defendant was overruled, as was the motion to permit defendant to act as his own co-counsel.

The trial did not take place April 24, 1972, due in part to successful efforts on the part of defendant to have the trial judge presiding over the case replaced. A trial judge was selected by lot, and the case proceeded to trial on July 10, 1972. Prior to trial, the trial judge reviewed all the motions filed on behalf of defendant and reached the same conclusions as were originally reached. The new trial judge, Judge Reda, listened to extensive arguments on behalf of permitting Mr. Kunstler to represent defendant, and on the day of trial again overruled the motion. Defendant, thereupon, dismissed and discharged his three Ohio counsel, but the trial proceeded nevertheless. The trial resulted in a jury verdict of guilty to all three charges,

Defendant appeals raising four assignments of error as follows:

"1. The trial court's refusal to permit defendant to be represented by his experienced out-of-state attorney who is a member in good standing of numerous federal and state bars, and who stands convicted of no contempt of court and is without a disciplinary blemish on his record during years at the bar, violated defendant's right to counsel of his choice under the Sixth and Fourteenth Amendments of the United States Constitution, as well as Article I, Section 10 of the Ohio Constitution, as well as the First Amendment of the United States Constitution, and was without factual or legal basis.

"2. The failure of the trial judge to treat as void the prior rulings in this case of another municipal judge who had been disqualified due to bias and prejudice and especially those rulings made after the filing of the Affidavit of Prejudice, violates the right to due process protected by the Fourteenth Amendment to the United States Constitution and the Ohio Constitution, as well as Section 2937.20 of the Ohio Revised Code.

"3. The arrest of appellant for a misdemeanor by the Director of Public Safety is contrary to Section 2935.03 of the Ohio Revised Code.

"4. The conviction for failure to depart after being told to do so by Bruce P. Hennick is not supported by any evidence that Bruch [sic] P. Hennick instructed defendant to leave the premises in question."

By his first assignment of error, defendant contends that the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution give to him the right to be represented by any counsel of his choice, whether or not such counsel is an attorney admitted to practice in Ohio. Each state has the right to regulate the practice of law within its jurisdiction, and to require that a person be admitted to practice by that state before he may be permitted to act as the attorney for any person in that state, including representation in a criminal matter. Thus, the constitutional right to representation by counsel is limited, with regard to the states, to coun-

sel admitted to practice in that state, unless no competent counsel so admitted is available. Defendant makes no contention that the three Ohio attorneys representing him were not competent to do so.

The general policy of Ohio is expressed in R. C. 4705.-01 as follows:

"No person shall be permitted to practice as an attorney and counselor at law, or to commence, conduct, or defend any action or proceeding in which he is not a party concerned, either by using or subscribing his own name, or the name of another person, unless he has been admitted to the bar by order of the supreme court in compliance with its prescribed and published rules. Admission to the bar shall entitle such person to practice before any court or administrative tribunal without further qualification or license."

It has, however, been generally recognized that an attorney not admitted to practice in Ohio, but in good standing in another state, may be specially admitted for the purpose of representing a person in a particular case, be it civil or criminal. Whether or not so to specially permit an attorney not admitted to practice in Ohio, but admitted to practice and in good standing in another state, to represent a party in a particular action, is a matter lying within the sound discretion of the trial court. Thus, we must determine whether there has been an abuse of discretion in this instance.

While R. C. 4705.01 does not specifically provide for such special permission of out-of-state attorneys to appear in litigation in Ohio, it is recognized by Section 8(C) of Gov. R. 1, as follows:

"An applicant under this section shall not engage in the practice of law in this state prior to the filing of his application. To do so constitutes the unauthorized practice of law and will result in a denial of the application. This paragraph (C) does not apply to participation by a nonresident of Ohio in a cause being litigated in this state when such participation is with leave of the judge hearing such cause."

This practice also is recognized by the ethical consid-

erations of Canon 3 of the Code of Professional Responsibility, adopted by the Supreme Court of Ohio. EC 3-9 provides as follows:

"Regulation of the practice of law is accomplished principally by the respective states. Authority to engage in the practice of law conferred in any jurisdiction is not per se a grant of the right to practice elsewhere, and it is improper for a lawyer to engage in practice where he is not permitted by law or by court order to do so. However, the demands of business and the mobility of our society pose distinct problems in the regulation of the practice of law by the states. In furtherance of the public interest, the legal profession should discourage regulation that unreasonably imposes territorial limitations upon the right of a lawyer to handle the legal affairs of his client or upon the opportunity of a client to obtain the services of a lawyer of his choice in all matters including the presentation of a contested matter in a tribunal before which the lawyer is not permanently admitted to practice."

Notice should also be made of the disciplinary rules of Canon 3, DR 3-101(B) of which provides that:

"A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction."

In *Parker* v. *Parker* (Fla. 1957), 97 So. 2d 136, the court interpreted the rule of the Florida Supreme Court providing that "A practicing attorney of another state, in good standing, who had professional business in a court of record of this state may, upon motion, be permitted to practice for the purpose of such business only, when it is made to appear that he has associated and appearing with him in such business an active member of the Florida Bar." The court, at 137, expressly held: "The right of an attorney of another state to practice is permissive and subject to the sound discretion of the court to which he applies for the permission." The Supreme Court of New Jersey considered a similar contention in *State* v. *Kavanaugh* (1968), 52 N. J. 7, 243 A. 2d 225, stating, at 18, 243 A. 2d at 231:

"Mr. Bailey's clients urge a constitutional right to select an attorney who is not a member of our Bar. So long

190

as the Bar of our State is able, willing and free to provide effective counsel, there is no such right. *Thomas* v. *Cassidy*, 249 F. 2d 91 (4 Cir. 1957), certiorari denied, *Fritzgerald* v. *Cassidy*, 355 U. S. 958, 78 S. Ct. 544, 2 L. Ed. 2d 533 (1958) ; *People of State of New York* v. *Epton*, 248 F. Supp. 276 (S. D. N. Y. 1965) ; see *Parker* v. *Parker*, 97 So. 2d 136 (Dist. Ct. App. Fla. 1957) ; *Johnson* v. *DiGiovanni*, 347 Mich. 118, 78 N. W. 2d 560, 565 (Sup. Ct. 1956). This is not a situation in which no member of the local Bar will act. See *Lefton* v. *City of Hattiesburg, Mississippi*, 333 F. 2d 280 (5 Cir. 1964). There is no dearth of competent attorneys in our State ready to meet the constitutional right to counsel. There is nothing provincial about the requirement for admission to practice in the courts of a State. The courts of every jurisdiction must have control of practice before them as an 'incident to their broader responsibility for keeping the administration of justice and the standards of professional conduct unsullied.' *Cohen* v. *Hurley*, 366 U. S. 117, 123-124, 81 S. Ct. 954, 958, 6 L. Ed. 2d 156, 162 (1961).

"Defendants refer to *United States* v. *Bergamo*, 154 F. 2d 31 (3 Cir. 1946), but that case dealt with practice in the federal courts. This was made clear in *Cooper* v. *Hutchinson*, 184 F. 2d 119 (3 Cir. 1950), where the same court described as 'startling' the suggestion that the courts of the States are bound to permit out-of-state attorneys to practice before them (p. 122). The *Cooper* case goes no further than to say that a constitutional issue is projected if an attorney admitted *pro hac vice* is removed in midstream for no reason at all and without a chance to be heard. See *Laughlin* v. *Eicher*, 79 U. S. App. D. C. 266, 145 F. 2d 700 (D. C. Cir. 1944), certiorari denied, 325 U. S. 866, 65 S. Ct. 1403, 89 L. Ed. 1985 (1945) ; *United States* v. *Madsen*, 148 F. Supp. 625, 16 Alaska 651 (D. Alaska 1957)."

The original trial judge, who was later disqualified, rendered a written decision denying the application for participation of the out-of-state counsel, indicating that the decision was predicated, at least in part, upon a finding of unprofessional conduct by the out-of-state attorney in connection with a press conference and rally. At the hearing before Judge Reda, on July 10, 1972, one of the Ohio

counsel for defendant stated, with respect to that decision:

"[It] was made without taking evidence, Your Honor. And it was entirely outside of the record and must have been based on hearsay. I don't know where it came from. It may have come from an erroneous newspaper article, there have been a number of them connected with this case."

Except for the decision, and argument at the July 10th hearing, we find no reference in the record to the press conference or rally.

However, at the July 10, 1972, hearing, Judge Reda directed the following to Mr. Kunstler:

"* * * I am concerned about your conduct outside the court room. I have never met you before, Mr. Kunstler, but I had reports about your conduct. Not only in this jurisdiction but also in other jurisdictions outside the court room.

"Now, do you have any statements that you would like to make to the Court with respect to what you believe an attorney's conduct should be outside of the court room?"

Mr. Kunstler replied, in pertinent part, as follows:

"Surely, Your Honor, I would be glad to. Outside of the court room I have every right to all the First Amendment privileges of any other person. I might add to Your Honor that the United States Court of Appeals for the Seventh Circuit ruled on that not in my case, in a case long before mine, where they held that an order of a District Judge forbidding lawyers to speak on the case before the Court outside the court was unconstitutional and granted mandamus, which is Chase versus Robeson [sic]. I think 1969 or '70 in the Seventh Circuit. And they said in that case, and I lived by that case since then, they said in that case that unless you can show by an evidentiary hearing that there is a clear and present danger to the administration of justice, no court can bind a lawyer or his client from speaking in a criminal matter outside the court room, from making extrajudicial statements. This is the standard which I have now adopted for myself. I think it's the law of the land, and I think it's clear. It has just been litigated both in New York and Florida and found to

be exactly that. So I would never promise Your Honor that I would not speak outside. I will speak outside, because I think that to bind me would be unconstitutional and would make attorneys have different First Amendment rights than anybody else. But I say that I will stay within the bounds of that court decision, which is the law of this land, Chase versus Robeson [sic] and I will stay within the bounds of that decision as I have. * * *''

In *Chase* v. *Robson* (C. C. A. 7, 1970), 435 F. 2d 1059, the Federal District Court had entered an order restricting out-of-court comments by parties and counsel. The trial court order was predicated in part upon the following, as quoted by the Circuit Court of Appeals, at pages 1060-1061:

'' 'This court takes judicial notice of the fact that one of the attorneys in this case, William C. Cunningham, was co-counsel in a similar case arising out of a raid upon a Selective Service office in Catonsville, Maryland. *United States* v. *Moylan*, 417 F. 2d 1002 (4th Cir. 1969). Also counsel of record in the appeal of the *Moylan* case was one William M. Kunstler, who has repeatedly and brazenly transgressed the local rules of this District Court, the Canons of Professional Ethics, and the spirit of the *Sheppard* decision (*Sheppard* v. *Maxwell*, 384 U. S. 333, 86 S. Ct. 1507, 16 L. Ed. 2d 600) by continuous inflammatory public statements concerning jurors, witnesses, evidence, the judge, and rulings by the court throughout the course of the trial in *United States* v. *Dellinger et al.*, No. 69 CR 180.
'' '* * *

'' 'Counsel in this case is experienced with the problems inherent in a case involving controversial issues and defendants. From his association with Kunstler, he should also be aware of the irreparable damage wrought to our legal system and to the dispassionate rule of law which occurs when counsel and parties engage in a strategy designed to inflame public passion and prejudice. Such misconduct destroys one or both parties' right to trial in a calm and serene atmosphere which the Supreme Court directed trial judges to maintain in the *Sheppard* decision.' ''

In commenting upon this aspect of the case, the court of appeals stated, at page 1061:

"Any associations that one of the defendants' attorneys may have had or continues to have with another attorney not involved in this case is irrelevant and not in any way supportive of the trial court's order."

The court did hold, at page 1061, as follows:

"We hold that before a trial court can limit defendants' and their attorneys' exercise of first amendment rights of freedom of speech, the record must contain sufficient specific findings by the trial court establishing that defendants' and their attorneys' conduct is 'a serious and imminent threat to the administration of justice.' *Craig* v. *Harney*, 331 U. S. 367, 373, 67 S. Ct. 1249, 1253, 91 L. Ed. 1546 (1947). Applying either the standard that the speech must create a 'clear and present danger,' *Wood* v. *Georgia*, 370 U. S. 375, 82 S. Ct. 1364, 8 L. Ed. 2d 569 (1962), of a serious and imminent threat to the administration of justice or the lesser standard that there must be a 'reasonable likelihood,' *United States* v. *Tijerina*, 412 F. 2d 661 (10th Cir. 1969), of a serious and imminent threat to the administration of justice, we hold that the trial court's order is constitutionally impermissible."

*Chase* dealt with rules imposed by a trial court with respect to the trial of a single case and did not involve general rules prescribed for the conduct of attorneys such as are contained in the Code of Professional Responsibility adopted by the Supreme Court of Ohio. Canon 7 deals with the subject at hand. With respect to ethical considerations, EC 7-33 provides as follows:

"A goal of our legal system is that each party shall have his case, criminal or civil, adjudicated by an impartial tribunal. The attainment of this goal may be defeated by dissemination of news or comments which tend to influence judge or jury. Such news or comments may prevent prospective jurors from being impartial at the outset of the trial and may also interfere with the obligation of jurors to base their verdict solely upon the evidence admitted in the trial. The release by a lawyer of out-of-court statements

regarding an anticipated or pending trial may improperly affect the impartiality of the tribunal. For these reasons, standards for permissible and prohibited conduct of a lawyer with respect to trial publicity have been established.'' The disciplinary rules specifically deal with the question of trial publicity and DR 7-107(B) provides as follows:

"A lawyer or law firm associated with the prosecution or defense of a criminal matter shall not, from the time of the filing of a complaint, information, or indictment, the issuance of an arrest warrant, or arrest until the commencement of the trial or disposition without trial, make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication and that relates to:

"(1) The character, reputation, or prior criminal record (including arrests, indictments, or other charges of crime) of the accused.

"(2) The possibility of a plea of guilty to the offense charged or to a lesser offense.

"(3) The existence or contents of any confession, admission, or statement given by the accused or his refusal or failure to make a statement.

"(4) The performance or results of any examinations or tests or the refusal or failure of the accused to submit to examinations or tests.

"(5) The identity, testimony, or credibility of a prospective witness.

"(6) Any opinion as to the guilt or innocence of the accused, the evidence, or the merits of the case.''

DR 7-107(C) provides certain announcements that may be made by attorneys and provides as follows:

"DR 7-107(B) does not preclude a lawyer during such period from announcing:

"(1) The name, age, residence, occupation, and family status of the accused.

"(2) If the accused has not been apprehended, any information necessary to aid in his apprehension or to warn the public of any dangers he may present.

"(3) A request for assistance in obtaining evidence.

"(4) The identity of the victim of the crime.

"(5) The fact, time, and place of arrest, resistance, pursuit, and use of weapons.

"(6) The identity of investigating and arresting officers or agencies and the length of the investigation.

"(7) At the time of seizure, a description of the physical evidence seized, other than a confession, admission, or statement.

"(8) The nature, substance, or text of the charge.

"(9) Quotations from or references to public records of the court in the case.

"(10) The scheduling or result of any step in the judicial proceedings.

"(11) That the accused denies the charges made against him."

DR 7-107(D) deals specifically with out-of-court statements during trial, and provides as follows:

"During the selection of a jury or the trial of a criminal matter, a lawyer or law firm associated with the prosecution or defense of a criminal matter shall not make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication and that relates to the trial, parties, or issues in the trial or other matters that are reasonably likely to interfere with a fair trial, except that he may quote from or refer without comment to public records of the court in the case."

It is readily apparent that the guidelines of *Chase, supra,* are inconsistent with Canon 7 of the Code of Professional Responsibility, as adopted by the Supreme Court of Ohio. From Mr. Kunstler's statement, the trial court was justified in concluding that Mr. Kunstler would not comply with the standards established by Canon 7 of the Code of Professional Responsibility with respect to out-of-court statements but, rather, would only comply with the lesser standard of *Chase* as he interpreted that standard to be. We find Canon 7 of the Code of Professional Responsibility, as recommended by the American Bar Association and adopted by the Supreme Court of Ohio, to be a constitutionally valid regulation of the conduct of attorneys with respect to out-of-court statements concerning pending liti-

gation. In fact, such canon would seem to be required by *Sheppard* v. *Maxwell* (1966), 384 U. S. 333, 86 S. Ct. 1507, wherein it is stated, at pages 361, 86 S. Ct. at 1521, 1522:

"More specifically, the trial court might well have proscribed extrajudicial statements by any lawyer, party, witness, or court official which divulged prejudicial matters, such as the refusal of Sheppard to submit to interrogation or take any lie detector tests; any statement made by Sheppard to officials; the identity of prospective witnesses or their probable testimony; any belief in guilt or innocence; or like statements concerning the merits of the case. See *State* v. *Van Duyne*, 43 N. J. 369, 389, 204 A. 2d 841, 852 (1964), in which the court interpreted Canon 20 of the American Bar Association's Canons of Professional Ethics to prohibit such statements."

The Supreme Court further stated, at page 363, 86 Sup. Ct. at 1522, as follows:

"The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function. Collaboration between counsel and the press as to information affecting the fairness of a criminal trial is not only subject to regulation, but is highly censurable and worthy of disciplinary measures."

Also referred to before the trial court was the matter of the contempt charges growing out of the Chicago trial. Mr. Kunstler stated, in this regard:

"* * * One of the reasons Judge Fais gave was my contempt of court convictions in Illinois growing out of the Chicago trial, and those convictions have been reversed. Not only reversed, but half of them thrown out as being unwarranted, and the rest ordered for a new trial before a jury and out of the jurisdiction of the district judge in Illinois. * * * They are at this point not germane to practice anywhere else in the United States in my opinion, because they are reversed. * * *"

In connection with our overruling of a motion to per-

mit out-of-state counsel to participate in the prosecution of this appeal, we set forth four non-exclusive questions that may be utilized, three of which are pertinent to the trial court, the fourth being whether such out-of-state counsel represented the party at the trial in the lower court. These three questions are:

(1) Did there exist a long-standing close personal relationship between the party and the out-of-state counsel? (2) Is the out-of-state counsel the customary counsel for the party in jurisdictions where such out-of-state counsel is admitted to practice? and (3) What is the situation with respect to the availability of counsel admitted to practice in Ohio who are competent to represent the party in the case? There is no contention that the second and third of these questions apply. There has been some contention that the first does.

At the July 10, 1972, hearing before Judge Reda, Mr. Kunstler stated:

"* * * I have represented Mr. Ross essentially from the beginning of all his legal problems. I came to Columbus in 1970 to represent Ronald Kay, a student who was charged with infractions of a disciplinary code of the Ohio State University. I represented him before that tribunal, he was acquitted of the charge. That's when I first met Charles Ross. This was in 1970, I think in the summer. Then in 1971 when he was brought up on proceedings under 1219 I represented him before the same tribunal, and he was acquitted in that case. The charges were dismissd on Constitutional grounds. * * * I represented him in those two proceedings, and the moment this proceeding started in May of 1971 he asked me to represent him. I did so at the time when Mr. Twohig I don't think was in Columbus or was involved in the matter at all, and I represented him throughout. In fact, Your Honor, I brought my file to the Court to show the breadth of this file involving Charles Ross in all of these proceedings. I have represented him as chief counsel in this matter. He has asked me so to be. * * *"

The defendant himself stated that Mr. Kunstler "has been my attorney now for more than a year and a half."

The record, however, reflects that the defendant was

represented by Messrs. Campbell and Boyland from May 1971 to March 1972, with no indication of any representation by other counsel. In March 1972, Mr. Twohig was added as counsel and, at approximately the same time, a motion for participation by Mr. Kunstler was made for the first time. At the March 10, 1972, pretrial, Mr. Boyland stated as follows:

"* * * It is my understanding that Mr. Twohig will be mainly responsible for the case so far as trial of the case and pretrial matters are concerned. * * *" Contrary to this, the defendant stated at the July 10th hearing:

"* * * But from the very beginning there was never any question that on the date this trial was to begin, that Bill Kunstler would be my lawyer and would handle the case here in the court. * * *" Mr. Kunstler also stated that "* * * He asked for me to be his chief counsel.* * *"

Furthermore, Mr. Kunstler, in a letter "motion" dated March 15, 1972, and filed with the trial court on March 16, 1972, stated as follows:

"This is to inform you that I represent Professor Ross in the above cases as co-counsel. While I may not be present at every session of court due to prior commitments, I will continue to so represent him in conjunction with his other attorneys and himself."

In *United States* v. *Bergamo* (C. C. A. 3, 1946), 154 F. 2d 31, there is some similarity to this case. In that case, the federal district court denied admittance to a nonresident counsel, and the resident counsel declined to proceed with the case. However, the federal district court denied a continuance to the resident counsel, who contended that he was not familiar with the case. Not only did *Bergamo* involve a federal district court, not a state court, but, unlike this case, the resident counsel was not familiar with the case. Here, there can be no doubt of the familiarity of the Ohio counsel with this case. They have participated throughout. Furthermore, the defendants in *Bergamo* were nonresidents, and the out-of-state counsel by whom they wished to be represented was an attorney admitted to practice in the state of which they were residents.

Here, an Ohio resident seeks to be represented by an

attorney who is not admitted to practice in Ohio. By Mr. Kunstler's own statement, he first became acquainted with the defendant in the summer of 1970 during a university disciplinary proceeding in Ohio involving another person, less than a year before the institution of the present litigation. Defendant stated: "From the very beginning there was never any question" that Mr. Kunstler "would be my lawyer and would handle the case here in court." However, the record indicates that the defendant was personally present at both the June 25, 1971, and March 10, 1972, pretrials. No mention or indication of any intention to request leave for Mr. Kunstler to represent defendant was made at the June 25, 1971 pretrial. As indicated above, at the March 10, 1972 pretrial, it was indicated that Mr. Twohig would be "mainly responsible" for the trial of the case, although a request for Mr. Kunstler's *pro hac vice* admission was made at that time.

In support of a motion to dismiss, filed on behalf of defendant on June 25, 1971, by his original counsel, certain newspaper articles pertained to administrative proceedings with respect to his position as a faculty member of Ohio State University. Those articles indicate that Mr. Boyland, as well as Mr. Kunstler, represented the defendant during those proceedings, and that Mr. Kunstler departed from Columbus during the proceedings, leaving the defense primarily in the hands of Mr. Boyland. Although these newspaper articles constitute hearsay, they were submitted by defendant and, if correct, would indicate that Mr. Boyland had represented the defendant for approximately the same length of time that defendant contended Mr. Knustler had, as would Mr. Boyland's initial representation of defendant in this case.

Defendant further relies upon *Spanos* v. *Skouras Theatres Corporation* (C. C. A. 2, 1966), 364 F. 2d 161, in support of his contention that he had a right of representation by an out-of-state attorney. That case does not so hold. First, that case involved an out-of-state attorney who sought to recover legal fees for legal advice and assistance given in connection with an antitrust suit in a New York federal court by an attorney not admitted to the bar of

New York or of the federal court involved. No *pro hac vice* admission was involved, since the client discharged the attorney in that case, but the court of appeals stated that there was "not the slightest reason" to believe that such admission would have been denied. Thus, the issue before the court was whether the client could avoid paying an out-of-state attorney whom he had employed over a period of five years for legal advice and assistance in connection with an antitrust suit, solely upon the grounds that such out-of-state attorney was not licensed to practice law in the jurisdiction involved. A holding that, under such circumstances, the client could not escape responsibility for paying the out-of-state attorney for legal advice and assistance in connection with litigation in federal court, hardly constitutes authority for the proposition that there is a constitutional right to employ out-of-state attorneys to defend a resident of a state on state criminal charges pending in a state court of which the defendant is a resident.

There is, in *Spanos,* certain dictum which can be quoted out of context, to support defendant's position, such as that contained at page 170:

"In an age of increased specialization and high mobility of the bar, this must comprehend the right to bring to the assistance of an attorney admitted in the resident state a lawyer licensed by 'public act' of any other state who is thought best fitted for the task, and to allow him to serve in whatever manner is most effective, subject only to valid rules of courts as to practice before them."

The circuit court of appeals also stated, at 170, that "under the privileges and immunities clause of the constitution, no state can prohibit a citizen with a thorough claim or defense, from engaging an out-of-state lawyer to collaborate with an in-state lawyer and give legal advice concerning it within the state." Even assuming this to be a correct statement of the law, and applicable in the instant case, there was nothing in the trial court's order refusing Mr. Kunstler *pro hac vice* admission to conduct the trial of the case which prevented him from collaborating with defendant's Ohio lawyers and giving legal advice concerning any possible federal defense that could be assert-

ed therein. Defendant's Ohio lawyers were free to consult with Mr. Kunstler and seek legal advice from him respecting trial strategy and procedure.

Considering all the attendant circumstances, we find that Judge Reda did not abuse his discretion in denying the request for *pro hac vice* admission of Mr. Kunstler.

Defendant further relies upon the case of *Argersinger* v. *Hamlin* (1972), 92 S. Ct. 2006, decided June 12, 1972. Even if that case were applicable, it would relate only to one of the three affidavits involved, since only a fine was imposed as a penalty with respect to the other two. Only in case number 13205 in the trial court was imprisonment imposed as a penalty. The United States Supreme Court expressly held that its decision in *Argersinger* was limited to situations where imprisonment is imposed, stating: "We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor or felony, unless he was represented by counsel at his trial."

Such a waiver is present in the instant case, with regard to representation by counsel. Defendant elected not to be represented by local counsel at his trial unless Mr. Kunstler also could participate in the trial. Defendant knowingly and intelligently waived his right to representation by counsel, choosing instead to rely upon his claim that he had a right to be represented by counsel not admitted to practice in Ohio. Defendant chose to take his chances of being successful upon that issue on appeal, rather than to be represented by counsel at his trial. Since we find that defendant's contentions in this regard are without merit, and that the trial court did not abuse its discretion, the defendant cannot be heard to complain because he was not represented by Ohio counsel at his trial.

Furthermore, defendant on March 16, 1972, filed a motion in the trial court seeking *pro hac vice* admission of Mr. Kunstler and permission for defendant to represent himself as co-counsel. While that motion provides space for signatures by the defendant and Mr. Twohig, as well as Mr. Kunstler, it is signed only by Mr. Kunstler. Significantly, it states in part:

"3. A critical part of Professor Ross' case is an examination of the political motivations of some prosecution witnesses in order to establish their lack of credibility.

"4. The direct opposition of those motivations to the political philosophies of Professor Ross was the direct cause of his arrest.

"5. This inquiry into political motives requires that counsel has the fullest and most direct comprehension of Professor Ross' political philosophy, past activities and the reports of these activities.

"6. Attorneys for Professor Ross confess their inability to fully and adequately conduct that inquiry, and represent that Professor Ross is best qualified to do so."

By signing this application, Mr. Kunstler represented to the court his "inability to fully and adequately conduct that inquiry." At trial, the defendant did not conduct that inquiry which, it was represented, he was "best qualified to do."

The first assignment of error is not well taken.

Likewise, the second assignment of error is not well taken. The record is clear that Judge Reda reviewed all of the various motions filed by defendant, and ruled on them. Judge Reda's original decision on the various motions filed by defendant appears in the record as document No. 50. In that decision, Judge Reda enumerates the various motions filed by defendant. Judge Reda, at that time, stated: "I have examined all of the motions and a lengthy memoranda submitted by both parties and see no good reasons for disturbing the decision of Judge Fais in any way." Judge Reda reiterated his position prior to trial on July 10th, stating:

"Mr. Twohig, I indicated to you on Friday, last Friday at 9 o'clock, what I had done was I had read all of the motions, I had read the memoranda that was submitted by you and by the attorney for the State of Ohio. I indicated that some of the motions that you filed involved issues that directed themselves to application of substantive law, * * * That your other motions directed themselves to the issues that pertained to discretion of the Court. * ** * And I indicated that I did not find any error in the application of

the substantive law with regard to your motions by Judge Fais.

"And I also indicated that as far as those motions that had to do with an exercise of the discretion of the court, that I would not disturb them. * * *

"So what I indicated to you was that I concur with Judge Fais not only in his rulings as far as the substantive law is concerned, but I concurred with Judge Fais also in those matters where he has exercised his discretion."

It is true that Judge Reda did state subsequently: "It's my feeling that where a judge of this court has ruled upon a substantive matter of law, that it would be highly improper for another judge of this court to substitute his judgment for the judgment of Judge Fais."

It will be noted that Judge Reda clearly limited the application of this philosophy to issues of substantive law. As to discretionary matters, he clearly indicated that he exercised his own independent discretion, although concurring with Judge Fais. As to the discretionary matters, especially the matter of representation by out-of-state counsel, Judge Reda devoted a considerable amount of time to a consideration of the issues, and permitted extensive arguments and hearings thereon.

Even assuming that Judge Reda did not fully consider the issues of substantive law involved, and that this constituted error, it would not be prejudicial error, unless the rulings on such issues of substantive law were erroneous. Defendant, with one exception, makes no contention herein that any of the rulings were erroneous, and, with the one exception, makes no assignment of error with respect to any of the rulings upon the motions involving issues of substantive law. Likewise, the only issue raised independently by defendant, with respect to the discretionary matters, is that involving representation by out-of-state counsel. The record is quite clear that Judge Reda exercised his own independent judgment in that matter. The only substantive law issue raised by defendant is that raised by the third assignment of error.

Judge Reda made an independent review of all the motions filed by defendant. He clearly stated that he con-

curred in the rulings previously made and found no error in those involving substantive law. Defendant has not demonstrated, or even raised the issue, except in the one instance, that any of the rulings involving issues of substantive law were erroneous. As to all discretionary matters, Judge Reda exercised his own discretion, and defendant has not demonstrated any abuse of that discretion. Accordingly, there is no prejudicial error in the manner in which Judge Reda considered the various motions. In fact, we find no error in the manner in which he did consider them. Judge Reda did not merely adopt all of the rulings previously made by Judge Fais. Rather, Judge Reda reviewed all of the motions and the memoranda submitted in support and in opposition thereto. The record clearly indicates that he was fully conversant with the motions and the issues raised thereby. There is no indication that the rulings would have been different had they not first have been ruled upon by Judge Fais. On the contrary, Judge Reda expressly stated that he concurred in all of the prior rulings. In fact, it is not at all clear from the record or from the argument in this court, exactly what defendant wished Judge Reda to do in addition. Defendant, in his brief herein, states that, "Judge Reda committed unquestionable error by allowing those rulings to stand." However, the record is clear that Judge Reda did not "allow" previous rulings to stand but, rather, reviewed all of the motions and made his own rulings thereon, which were the same in result as the previous rulings.

By his third assignment of error, defendant contends that his arrest was illegal, contending that he was arrested by the director of public safety and that the director of public safety has no power of arrest. The record indicates that, although the words involved may have been spoken by the director of public safety, the actual physical arrest was made by a police officer, apparently acting under the direction of the director of public safety, his superior.

Defendant contends that his arrest was illegal and that, therefore, the charges against him should be dismissed. However, in *State* v. *Hooper* (1966). 10 Ohio App. 2d 229, the second paragraph of the syllabus states:

"An illegal arrest does not, in itself, invalidate an affidavit filed in a misdemeanor case and is not a proper ground to sustain a motion to quash the affidavit." The United States Supreme Court denied *certiorari* in an appeal from this decision. See *Hooper* v. *Ohio,* 389 U. S. 928. Subsequently, the conviction was vacated by a United States district court upon other grounds, in a habeas corpus action. The defendant therein was again convicted, and his conviction was confirmed by the Ohio Supreme Court in *State* v. *Hooper,* 25 Ohio St. 2d 59.

Since the only contention defendant makes with respect to his claim that his arrest was illegal is that the charges against him should be dismissed, it is unnecessary to determine whether or not the director of public safety has the power to make an arrest. Even if he has not, and the arrest was illegal, this does not constitute grounds for dismissal of the charges.

The third assignment of error is not well taken.

By his fourth assignment of error, defendant contends that his conviction upon the charge of failing to depart after being told to do so is invalid because the affidavit indicates the name of the agent of the school, so ordering defendant, to be "Bruce P. Hennick," whereas the evidence indicates the name of the person so ordering to be the principal of the school, Duane Reed.

Defendant was charged with neglecting or refusing to depart from Linden-McKinley High School after being notified to do so by the agent, or servant, of the owner or occupant thereof, in violation of R. C. 2909.21. An affidavit charging an offense under that section obviously need not specify the name of the agent, or servant, of the owner or occupant who notified the accused to depart from the premises. In other words, had the affidavit omitted entirely any reference to the name of the servant of the school actually ordering the accused to depart, there would be no issue as to the validity of the affidavit. The issue, thus, is whether the insertion of an incorrect name in the affidavit nullifies the conviction upon the charge. The state relies upon R. C. 2941.26, which reads as follows:

"When, on the trial of an indictment or information,

there appears to be a variance between the statement in such indictment or information and the evidence offered in proof thereof, in the Christian name or surname, or other description of a person therein named or described, or in the name or description of a matter or thing therein named or described, such variance is not ground for an acquittal of the defendant unless the court before which the trial is had finds that such variance is material to the merits of the case or may be prejudicial to the defendant.''

While that section refers to indictments or informations, it is made applicable to prosecutions for misdemeanors by affidavit by R. C. 2941.35. See *State* v. *Walker*, 20 Ohio App. 2d 179.

Furthermore, R. C. 2941.30 provides that:

''The court may at any time before, during, or after a trial amend the indictment, information, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. * * *''

That section also is made applicable to misdemeanors being prosecuted by affidavit by R. C. 2941.35. See *State* v. *Walker, supra.*

While R. C. 2941.30 does provide that the accused may be entitled to a continuance where an amendment is necessary to cure a variance between the affidavit and the proof, unless the defendant was not misled or prejudiced by the variance, this issue was not raised in the trial court and is being raised by defendant for the first time on appeal. R. C. 2941.30 provides, further: ''No action of the court in refusing a continuance or postponement under this section is reviewable except after motion to and refusal by the trial court to grant a new trial therefor.'' That section also provides that there shall be no reversal unless ''the reviewing court finds that the accused was prejudiced in his defense or that a failure of justice resulted.'' In view of the fact that the defendant elected to make no defense but, rather, to rely solely upon his contention that he was entitled to be represented by the out-of-state attorney, Mr.

Kunstler, he obviously was not prejudiced in his defense. Defendant has not demonstrated that a failure of justice has resulted from the variance.

The variance does not constitute a change in the name or identity of the crime charged. Defendant was charged with failing to depart after being ordered to do so. The variance was in the name of the person giving the order, not in the identity of the crime. See *Stewart* v. *Alvis*, 90 Ohio App. 377; and *State* v. *Dye* (1968), 14 Ohio App. 2d 7.

We do not feel that the fact that the affidavit was not actually amended requires a different conclusion, inasmuch as the issue was not raised in the trial court. It would have been proper for the trial court to allow the amendment, and had the issue been raised therein, the trial court could have corrected the affidavit to conform to the evidence. R. C. 2941.30, *supra,* expressly provides that such an amendment may be made after trial.

More controlling is R. C. 2945.83 which provides:

"No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of:

"(A) An inaccuracy or imperfection in the indictment, information, or warrant, provided that the charge is sufficient to fairly and reasonably inform the accused of the nature and cause of the accusation against him:

"(B) A variance between the allegations and the proof thereof unless the accused is misled or prejudiced thereby;
" * * *

"(E) Any other cause unless it appears affirmatively from the record that the accused was prejudiced thereby or was prevented from having a fair trial."

It does not affirmatively appear from the record that the defendant was prejudiced or prevented from having a fair trial by either the variance in the proof from the affidavit, or the failure of the prosecution to amend the affidavit at trial. Likewise, it does not appear that the variance between the allegations of the affidavit, and the proof, in the name of the person who gave the order to defendant to depart, misled the accused or prejudiced him, in view of the

fact that he offered no defense but, rather, chose to rely solely upon his contention that he had an absolute right to be represented by the out-of-state attorney, Mr. Kunstler. Accordingly, the fourth assignment of error is not well taken.

Inasmuch as the only errors urged by defendant are the four assignments of error which we have considered, the judgment of the trial court must be affirmed.

For the foregoing reasons, the four assignments of error are overruled, and the judgment of the Franklin County Municipal Court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and REILLY, JJ., concur.