DAVIS et al., Appellants,

v.

MARCOTTE, Appellee.

[Cite as *Davis v. Marcotte*, 193 Ohio App.3d 102, 2011-Ohio-1189.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–361.

Decided March 15, 2011.

Beam & Raymond Associates, Jack Beam, and Douglas J. Raymond, for appellant Jacqlyn Davis, on behalf of her minor son, Brandon Davis.

Chester, Willcox & Saxbe L.L.P., Charles R. Saxbe, and Elizabeth J. Watters, for appellant Geoffrey N. Fieger.

Robison, Curphey & O'Connell, L.L.C., James E. Brazeau and Jean Ann S. Sieler, for third-party appellee St. Vincent Medical Center.

Michael DeWine, Attorney General, and Anne Berry Strait, Principal Assistant Attorney General; and Sutter, O'Connell & Farchione Co., L.P.A., and Joseph A. Farchione, for third-party appellee the University of Toledo Medical Center.

TYACK, Judge.

{¶ 1} This case is before the court as a result of an order of the Ohio Court of Claims barring attorney Geoffrey N. Fieger from serving as a counsel of record.

Counsel for Fieger have filed a notice of appeal on his behalf. Counsel for Jacqlyn Davis, on behalf of her son Brandon Davis, have also filed an appeal.

{¶ 2} Counsel for Fieger have presented six assignments of error for our review. Counsel for Davis have presented the same assignments of error. They are:

I. The Court of Claims of Ohio erred in granting defendant/third-party plaintiff/counter defendant St. Vincent Mercy Medical Center's motion to revoke the *pro hac vice* admission of Attorney Geoffrey N. Fieger, abused its discretion and was arbitrary and unreasonable in finding that since his *pro hac vice* admission in 2004 as well as before the Court of Claims on April 23, 2007, appellant Fieger had engaged in a pattern of conduct in other courts which demonstrated that he was ill-suited for continued practice in this case.

II. The Court of Claims of Ohio erred in granting defendant/third-party plaintiff/counter defendant St. Vincent Mercy Medical Center's motion to revoke the *pro hac vice* admission of Attorney Geoffrey N. Fieger, abused its discretion and was arbitrary and unreasonable in finding that appellant Fieger's conduct in other cases established that he failed to act with a reasonable degree of propriety in Ohio and other jurisdictions.

III. The Court of Claims of Ohio erred in granting defendant/third-party plaintiff/counter defendant St. Vincent Mercy Medical Center's motion to revoke the *pro hac vice* admission of Attorney Geoffrey N. Fieger, abused its discretion, and was arbitrary and unreasonable in finding that appellant Fieger had engaged in egregious misconduct which could taint or diminish the integrity of future proceedings before the Court of Claims of Ohio.

IV. The Court of Claims of Ohio erred in granting defendant/third-party plaintiff/counter defendant St. Vincent Mercy Medical Center's motion to revoke the *pro hac vice* admission of Attorney Geoffrey N. Fieger, abused its discretion, and was arbitrary and unreasonable in applying the three, factors [sic] test of [*State v. Ross* (1973), 36 Ohio App.2d 185, 65 O.O.2d 316, 304 N.E.2d 396], which are used by a trial court to determine whether to grant a motion for *pro hac vice* admission, not whether to revoke a *pro hac vice* admission.

V. The Court of Claims of Ohio erred in failing to conduct a full evidentiary hearing before granting defendant/third-party plaintiff/counter defendant St. Vincent Mercy Medical Center's motion to revoke the *pro hac vice* admission of appellant Geoffrey N. Fieger.

VI. The Court of Claims of Ohio violated appellants' rights to due process, equal protection of the laws, and rights under the privileges and immunities clause and the commerce clause of the United States Constitution in granting defendant/third-party plaintiff/counter defendant St. Vincent Mercy Medical

Center's motion to revoke the *pro hac vice* admission of Attorney Geoffrey N. Fieger.

{¶ 3} We initially must address the issue of whether Fieger, who was never a party in the case below, can now be a party in this appeal. Consistent with our past case law, we find that he cannot. See *In re Elliot,* 10th Dist. No. 03AP–1280, 2005-Ohio-2195, 2005 WL 1055798. The motion of appellees requesting that Fieger be dismissed as a party to this appeal is sustained.

{¶ 4} We now turn to the merits of the assignments of error filed on behalf of Jacqlyn Davis.

{¶ 5} The first three assigned errors are essentially the same, arguing that the trial court abused its discretion by revoking Fieger's pro hac vice admission. We will address those three together, followed by the fourth and fifth assigned errors concerning the trial court's error in applying a three-prong test set forth in *State v. Ross* (1973), 36 Ohio App.2d 185, 65 O.O.2d 316, 304 N.E.2d 396, and the trial court's failure to hold an evidentiary hearing prior to revoking Fieger's admission.

{¶ 6} First, however, we will address the sixth assignment of error, which argues that the trial court violated Fieger's constitutional rights by revoking his pro hac vice admission. For the following reasons, we disagree, and we overrule the sixth assigned error.

{¶ 7} Regulation of the practice of law has always been left to the individual states, and without certain residency requirements, each individual state " 'would cease to be the separate political communit[y] that history and the constitutional text make plain w[as] contemplated.' " *Supreme Court of New Hampshire v. Piper* (1985), 470 U.S. 274, 282, 105 S.Ct. 1272, 84 L.Ed.2d 205, fn. 13, quoting Gary J. Simson, Discrimination Against Nonresidents and the Privileges and Immunities Clause of Article IV, 128 U.Pa.L.Rev. 379, 387 (1979); *Leis v. Flynt* (1979), 439 U.S. 438, 442, 99 S.Ct. 698, 58 L.Ed.2d 717. In addition to having residency requirements for the practice of law, many states also reserve other rights and privileges for their own residents—e.g., drivers' licenses, the right to vote, and the right to hold public office. See, e.g., *Dunn v. Blumstein* (1972), 405 U.S. 330, 343, 92 S.Ct. 995, 31 L.Ed.2d 274; and *Baldwin v. Fish & Game Comm. of Montana* (1978), 436 U.S. 371, 383, 98 S.Ct. 1852, 56 L.Ed.2d 354.

{¶ 8} The above rules apply when considering states' individual rules for admitting or licensing out-of-state attorneys, which is entirely separate from admission pro hac vice. Pro hac vice, of course, is the Latin expression meaning "for this occasion." Black's Law Dictionary (8th Ed. 2004). Since an attorney's admission pro hac vice is limited in duration, the requirements for admission are less stringent than those for permanent admission to the state bar. See Gov.Bar

R. I (general admission to the practice of law); cf. Gov.Bar R. XII (pro hac vice admission). It is common knowledge that gaining regular admission to the Ohio bar takes one year or longer to complete—there is a lengthy application, which requires several references, a comprehensive background check with fingerprinting, and two separate examinations, among other things. See generally Gov.Bar R.I. Such a lengthy application process would frustrate the purpose of an attorney trying to gain (more or less) immediate admission to practice in connection with a case already pending before an Ohio tribunal.

{¶ 9} The pro hac vice admission rules, on the other hand, are substantially abbreviated:

A *tribunal* of this state may grant permission to appear pro hac vice to an out-of-state attorney who is admitted to practice in the highest court of a[nother] state * * * and is in good standing to appear pro hac vice in a proceeding [in this state].

(Emphasis added.) Gov.Bar R. XII, Section 2(A).

{¶ 10} Effective January 1, 2011, the Supreme Court of Ohio has expanded the rules regarding pro hac vice admissions to the courts of Ohio. Attorneys who are not licensed in Ohio must go through an application process and pay a fee in order to be included on a list of attorneys who can represent clients pro hac vice. As best we can determine, Fieger has not taken the necessary steps for admission to Ohio courts on a pro hac vice basis and for this reason alone could not represent clients in Ohio courts.

{¶ 11} Because Fieger may take such steps in the future and may be taking the necessary steps even now, we will address the merit of the assignments of error anyway.

{¶ 12} Returning to the sixth assignment of error alleging a violation of due process of law, we find no such violation. The Ohio Court of Claims held a hearing that lasted over one hour. Fieger was invited to present evidentiary material in support of his request to serve as counsel in the case. He did not present that material. This hearing is discussed in more detail below. However, no due-process-of-law problems are presented by the process used by the Ohio Court of Claims.

{¶ 13} The sixth assignment of error is overruled.

{¶ 14} As noted previously, the first three assignments of error all argue that the Ohio Court of Claims abused its discretion in preventing Fieger service or continued service as counsel for appellants in the trial court.

{¶ 15} Because the admission of out-of-state attorneys pro hac vice is within the sound discretion of the trial court, we review these assignments of

error for abuse of discretion. See, e.g., *Royal Indemn. Co. v. J.C. Penney Co., Inc.* (1986), 27 Ohio St.3d 31, 27 OBR 447, 501 N.E.2d 617, paragraph two of the syllabus; *State v. Ross* (1973), 36 Ohio App.2d 185, 188, 65 O.O.2d 316, 304 N.E.2d 396; *D.H. Overmyer Co. v. Robson* (C.A.6, 1984), 750 F.2d 31, 33.

{¶ 16} The underlying cases to which this controversy is attached began in 2004 in the Lucas County Court of Common Pleas. Appellant Jacqlyn Davis filed a complaint for negligence, on behalf of her son, against the doctor(s) who delivered her son and the hospital where she gave birth to him. According to the complaint, Brandon Davis suffered a skull fracture and hypoxic ischemia, allegedly caused by substandard obstetric care.

{¶ 17} The Davises' attorney, Jack Beam, who is a member of the Ohio bar, filed the complaint on March 3, 2004, and roughly two weeks later moved for the pro hac vice admission of out-of-state attorneys Geoffrey N. Fieger and Douglas Raymond. Beam attached his own affidavit to the motion, stating that the case was too complex for him to handle alone, and further that he did not have the financial resources to take the case on his own. Raymond also submitted an affidavit to the trial court in which he estimated that the costs of the case would likely exceed several hundred thousand dollars. He also stated that he had previously worked with attorneys Fieger and Beam on other cases.

{¶ 18} St. Vincent opposed the motion, citing Fieger's allegedly egregious conduct in proceedings before Michigan, Florida, and other Ohio courts, as well as the United States Court of Appeals for the Sixth Circuit. These other matters mainly occurred between 1999 and 2004.

{¶ 19} The common pleas court nevertheless granted the motion, granting attorneys Fieger and Raymond pro hac vice admission. The case then proceeded in Lucas County for a little over one year, until such time as Dr. Marcotte filed a motion to stay the proceedings pending an Ohio Court of Claims determination of whether he was entitled to governmental immunity (because of his affiliation with the Medical College of Ohio). Over the next two years, the parties conducted substantial discovery, including depositions of family members and medical personnel. Fieger did not directly participate in these activities. On February 9, 2007, the guardian of Brandon Davis's estate filed a similar malpractice lawsuit in the Ohio Court of Claims. *McLeod v. Med. College of Ohio*,[1] Ct. of Cl. No. 2007-01967. Beam, who also represented McLeod, immediately moved for Fieger's admission pro hac vice in the Ohio Court of Claims in that case. On April 23, 2007, the Court of Claims granted Beam's motion and admitted Fieger pro hac vice in that case.

---

1. Medical College of Ohio was the only defendant in this case.

{¶ 20} In February 2009, the Court of Claims issued an order consolidating the two cases (*Davis v. Marcotte*, Ct. of Cl. No. 2008–10552–PR, and *McLeod*). Two months later, St. Vincent moved to revoke Fieger's admission privileges (St. Vincent was not a party to the Court of Claims case in which Fieger was admitted). In their motion, St. Vincent raised the same arguments that they had raised in the common pleas court five years earlier. St. Vincent also highlighted an alleged pattern of unprofessional behavior that attorney Fieger had exhibited during the pendency of the instant case, discussing the following factors: (1) Cuyahoga County Common Pleas Judge Nancy Margaret Russo cited attorney Fieger for making threats to an insurance adjuster and a witness, initiating a physical altercation with another attorney, and making indignant comments to the court, calling opposing counsel, witnesses, and jurors "liars"; [2] (2) the Eighth District Court of Appeals noted that attorney Fieger had urged his client(s) in a probate case to relocate to Michigan, which resulted in Fieger collecting twice as much in legal fees as the Ohio court had awarded; [3] (3) censures by the Supreme Court of Arizona in 2007 (and reciprocal disciplinary action by the Supreme Court of Michigan), for entering into an employment contract while his law license was under suspension for failing to comply with continuing-legal-education requirements; [4] (4) the Ohio Supreme Court case of *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201 (affirming motion for new trial based on misconduct by Fieger, as plaintiff's counsel). Justice Paul Pfeifer dissented, admonishing Fieger and stating that remittitur would have been a more appropriate remedy:

> To order a retrial because of the *obnoxious behavior of an* attorney [Fieger] does our system of justice no favors * * *.

> Should the plaintiff refuse the remittitur, he would be entitled to a new trial. Before that trial, it would be wise for the trial judge to deny any motion for admission pro hac vice filed on behalf of Mr. Fieger.

(Emphasis added.) Id. at ¶ 48–49, Pfeifer, J., dissenting; (5) the Supreme Court of Indiana barred Fieger from seeking pro hac vice admission for two years, after finding that he failed to disclose two disciplinary actions pending against him in Michigan and Arizona; [5] and (6) the Supreme Court of Florida ordered Fieger to

---

2. *Willis v. Dillard's, Inc.*, Cuyahoga C.P. No. CV–03–499877.

3. *In re Guardianship of Hollins*, 8th Dist. No. 86412, 2006-Ohio-1543, 2006 WL 825389, ¶ 16 (Calabrese Jr., P.J., dissenting).

4. *In re Fieger* (Ariz.2007), No. SB–07–0048–D.

5. *In re Fieger* (Ind.2008), 887 N.E.2d 87, 90.

pay $1,400 in restitution to the Florida Bar in 2008.[6]

{¶ 21} St. Vincent also argued that Fieger could not meet the pro hac vice admission prerequisites set forth by this court in *Ross*, 36 Ohio App.2d at 197, 65 O.O.2d 316, 304 N.E.2d 396:

(1) Did there exist a long-standing close personal relationship between the party and the out-of-state counsel? (2) Is the out-of-state counsel the customary counsel for the party in jurisdictions where such out-of-state counsel is admitted to practice? and (3) What is the situation with respect to the availability of counsel admitted to practice in Ohio who are competent to represent the party in the case? * * *

{¶ 22} During a status conference in October 2009, while St. Vincent's motion was still pending, the Court of Claims scheduled an oral hearing on the motion for February 5, 2010. It was at that February hearing that Fieger made his first (physical) appearance in the case.

{¶ 23} At the hearing, the court heard arguments from all counsel, including Fieger. The hearing lasted longer than one hour; and at the end of the hearing, the court advised all the parties that they had one week to submit additional evidence to supplement their arguments. St. Vincent filed a supplemental brief, with additional exhibits, and an affidavit by attorney Jean Ann S. Sieler, who stated that Fieger had not been directly involved in the case, that attorneys Beam and Raymond were the ones who attended the depositions and prior hearings, and that Beam and Raymond "advertise themselves on their website as having over 25 years of experience representing children, like Brandon Davis, in medical malpractice cases." Fieger, on the other hand, also filed a supplemental brief, but in addition, also filed a motion to recuse Ohio Court of Claims Judge Joseph Clark, based on Fieger's belief that the judge was likely to conduct himself improperly if not removed from the case.

{¶ 24} On March 17, 2010, the Ohio Court of Claims issued its decision granting St. Vincent's motion to revoke Fieger's pro hac vice admission:

The court finds that plaintiff has not presented any evidence of either a long-standing close personal relationship between plaintiff and attorney Fieger or that attorney Fieger is the customary counsel for her in jurisdictions where he is admitted to practice. Instead attorney Sieler's affidavit shows that attorney Fieger has not had substantial involvement in the discovery phase of this matter. Additionally, attorney Beam, who is licensed in Ohio, is both competent and available to represent plaintiff. Attorney Beam demonstrated his competence in this case during Dr. Marcotte's immunity hearing.

---

6. *Florida Bar v. Fieger* (Fla.2008), 985 So.2d 1092 (Table), 2008 WL 2523616.

Court of Claims decision, pages 3–4, citing *Ross,* 36 Ohio App.2d 185, 65 O.O.2d 316, 304 N.E.2d 396.

{¶ 25} The Ohio Court of Claims also cited Fieger's "pattern of conduct in other courts [that] demonstrates that he is ill-suited for continued practice in this case" and cited *Royal Indemn.,* 27 Ohio St.3d 31, 27 OBR 447, 501 N.E.2d 617, in its conclusion that attorney Fieger's pro hac vice admission should be revoked. Id. at 4.

{¶ 26} An abuse of discretion is more than an error of law or in judgment; rather, it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140, citing *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144; *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855; *Conner v. Conner* (1959), 170 Ohio St. 85, 9 O.O.2d 480, 162 N.E.2d 852; *Chester Twp. v. Geauga Cty. Budget Comm.* (1976), 48 Ohio St.2d 372, 2 O.O.3d 484, 358 N.E.2d 610. Accordingly, when we review the trial court's determination using this standard, we do not simply look at the result in the trial court relative to how this court may have decided the issues on appeal—i.e., we will not substitute our judgment for that of the trial court. See, e.g., *Fleisher v. Ford Motor Co.,* 10th Dist. No. 09AP–139, 2009-Ohio-3846, 2009 WL 2374554, ¶ 11.

{¶ 27} In this case, there is very little, if any, basis for appellants' argument that the trial court abused its discretion in revoking Fieger's pro hac vice admission. Appellants, however, argue that Fieger's prior "disciplinary history" was not probative and that he was merely a victim because he regularly engaged in representing unpopular clients. Even if this were true, the number of instances in which Fieger has been implicated in some sort of impropriety casts serious doubt on the supposition that he has merely been in the wrong place at the wrong time. To the contrary, the record shows that Fieger has engaged in a variety of conduct that was detrimental to the legal profession—hiding adverse facts from a tribunal, as he did in Indiana; outrageous comments to the jury regarding damages in an Ohio case; and convincing clients to relocate to another state so he could collect more legal fees.

{¶ 28} As noted earlier, it is a privilege for an out-of-state attorney to gain pro hac vice admission in the courts of Ohio. We cannot say that the trial court abused its discretion by removing him from this case. The first, second, and third assignments of error are overruled.

{¶ 29} In the fourth assignment of error, appellants argue that the trial court misapplied the factors we set forth in *Ross,* 36 Ohio App.2d 185, 65 O.O.2d 316, 304 N.E.2d 396. To the extent that our disposition and discussion regarding the

first three assignments of error does not render this assignment of error moot, we note the evidence of questionable behavior exhibited by Fieger. We do not need to decide whether the trial court misapplied *Ross*, because the decision stands firmly on other grounds. See, e.g., *Agricultural Ins. Co. v. Constantine* (1944), 144 Ohio St. 275, 284, 29 O.O. 426, 58 N.E.2d 658 ("[A] reviewing court is not authorized to reverse such judgment merely because erroneous reasons were assigned as the basis thereof"); *Perry v. Gen. Motors Corp.* (1996), 113 Ohio App.3d 318, 324, 680 N.E.2d 1069 ("Even if a trial court has stated an erroneous basis for its judgment, a reviewing court will affirm the judgment if it is legally correct for another reason").

{¶ 30} The fourth assignment of error is overruled.

{¶ 31} In the fifth assignment of error, appellants argue that the trial court abused its discretion by revoking Fieger's pro hac vice admission without first holding an evidentiary hearing. We disagree.

{¶ 32} Appellants do not call into question the authenticity or reliability of the evidence that the Ohio Court of Claims relied upon in its decision; rather, appellants assert that the published (and unpublished) decisions of Ohio and other courts are not "evidence" or were not properly "before the court." Appellants base this contention on the fact that the trial court did not swear in witnesses at the motion hearing. However, courts routinely decide summary-judgment motions without swearing in witnesses. In doing so, they rely on the evidence in the record—i.e., the allegations in the pleadings, the defenses, and the documentary evidence submitted, together with affidavits and depositions of the parties and witnesses. Given the substantial rights in jeopardy on a motion for summary judgment, there is no reason why the same quality of evidence that is sufficient there is insufficient in the instant proceeding.

{¶ 33} We also note that courts routinely take judicial notice of disciplinary proceedings and dispositions. See, e.g., *Cuyahoga Cty. Bar Assn. v. Chandler* (1998), 81 Ohio St.3d 491, 493, 692 N.E.2d 568 ("[W]e take judicial notice that respondent is currently under two separate suspensions").

{¶ 34} Appellees also argue that this issue is not even properly before the court, because appellants failed to object to the trial court's refusal to hold an evidentiary hearing. It is true that an objection not raised in the trial court cannot be assigned as error on appeal. See generally *State v. Grubb* (1986), 28 Ohio St.3d 199, 203, 28 OBR 285, 503 N.E.2d 142, citing Evid.R. 103.

{¶ 35} Regardless of whether the hearing that the Ohio Court of Claims held on the motion to revoke Fieger's admission was styled as an "evidentiary hearing" per se, it provided appellants with a meaningful opportunity to be heard.

{¶ 36} Accordingly, we overrule the fifth assignment of error.

{¶ 37} In sum, we overrule the first, second, third, fourth, fifth, and sixth assignments of errors. Having overruled all assignments of error, we affirm the judgment and remand the cause to the Ohio Court of Claims for further proceedings.

Judgment affirmed
and cause remanded.

FRENCH and DORRIAN, JJ., concur.