ROYAL INDEMNITY COMPANY, APPELLANT, *v.*
J. C. PENNEY COMPANY, INC. ET AL., APPELLEES;
SOUTHLAND STORES COMPANY ET AL., APPELLANTS.
VISCONSI ET AL., TRUSTEES, D.B.A. SOUTHLAND
STORES COMPANY, ET AL., APPELLANTS, *v.*
J. C. PENNEY COMPANY, INC. ET AL., APPELLEES.
MARC GLASSMAN, INC., D.B.A. MARC'S *v.*
J. C. PENNEY COMPANY, INC. ET AL., APPELLEES;
SOUTHLAND STORES COMPANY ET AL., APPELLANTS.

[Cite as Royal Indemnity Co. *v.* J. C. Penney Co. (1986), 27 Ohio St. 3d 31.]

(No. 85-2015—Decided November 26, 1986.)

*Weston, Hurd, Fallon, Paisley & Howley, Louis Paisley* and *John F. Sutton,* for appellants.

*Baker & Hostetler, Albert J. Knopp, Douglas P. Whipple* and *Harold Mead Hickok,* for appellee J. C. Penney Company, Inc.

*Gallagher, Sharp, Fulton & Norman, Alan M. Petrov, Thomas J. Kaiser* and *Elaine C. Hilliard,* for appellee Rossborough Elevator Company.

WRIGHT, J. This case requires us to determine the circumstances in which an attorney's *pro hac vice* admission can be revoked by a trial court. Attorneys admitted in other states, but not in Ohio, may request permission from the court to appear *pro hac vice*.[2] The decision of whether to permit representation by out-of-state counsel in an Ohio court is a matter within the discretion of the trial court. *State* v. *Ross* (1973), 36 Ohio App. 2d 185 [65 O.O.2d 316]; *D. H. Overmyer Co.* v. *Robson* (C.A. 6, 1984), 750 F. 2d 31. Out-of-state lawyers have no absolute right under state or federal law to practice in Ohio. *Leis* v. *Flynt* (1979), 439 U.S. 438 [11 O.O.3d 302]. Furthermore, once *pro hac vice* status is extended, a trial court retains the power to revoke the status. This is part of the court's inherent power to regulate the practice before it and protect the integrity of

---

[2] Gov. Bar R. I(9)(D) provides when out-of-state attorneys may appear *pro hac vice* in Ohio courts and states as follows:

"An applicant under this section shall not engage in the practice of law in this State prior to the filing of his application. To do so constitutes the unauthorized practice of law and will result in a denial of the application. This paragraph (D) does not apply to participation by a nonresident of Ohio in a cause being litigated in this State when such participation is with leave of the judge hearing such cause."

its proceedings. *D. H. Overmyer Co.* v. *Robson, supra; Smith* v. *Brock* (Okla. 1975), 532 P. 2d 843.

## I

Appellants contend that revocation of an attorney's *pro hac vice* admission is a remedy of last resort which can only be invoked when contempt sanctions and conventional disciplinary procedures are not appropriate. We disagree.

Disciplinary proceedings, contempt sanctions and court revocation of *pro hac vice* privileges are distinct, but not exclusive methods of addressing attorney misconduct. *Pantori, Inc.* v. *Stephenson* (Fla. App. 1980), 384 So. 2d 1357. *United States* v. *Madsen* (D. Alaska 1957), 148 F. Supp. 625, 632. This court exercises exclusive original jurisdiction of "[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law." Section 2(B)(1)(g), Article IV, Ohio Constitution. However, a trial court retains the "authority and duty to see to the ethical conduct of attorneys in proceedings before it * * * [and] [u]pon proper grounds it can disqualify an attorney." *Hahn* v. *Boeing Co.* (1980), 95 Wash. 2d 28, 34, 621 P. 2d 1263, 1266. An attorney may be subject to disciplinary proceedings by a state supreme court for the same conduct that led to a contempt citation or the revocation of his *pro hac vice* admission by the trial judge. *In re Bailey* (1971), 57 N.J. 451, 273 A. 2d 563. In fact, an attorney may be disciplined in both his home state and the state in which he appeared *pro hac vice. Kentucky Bar Assn.* v. *Shane* (1977), 553 S.W. 2d 467; *In re Neff* (1980), 83 Ill. 2d 20, 46 Ill. Dec. 169, 413 N.E. 2d 1282. Therefore, revocation of *pro hac vice* admissions, disciplinary procedures and contempt sanctions are separate and distinct methods of addressing attorney misconduct, and the appropriateness of one is not dependent on the availability of another.

## II

Appellants next contend that a trial court may only disqualify an attorney from continued participation in ongoing litigation where that attorney's continued participation might unfairly affect the outcome of the litigation. This contention too narrowly restricts the inherent power of the court to protect the integrity of its proceedings. The most common basis for trial court disqualification of an attorney is the risk of a tainted trial due to an actual or potential conflict of interest. *Glueck* v. *Jonathan Logan, Inc.* (C.A. 2, 1981), 653 F. 2d 746, at 748. However, this is not the only ground for disqualification. The trial court's power to protect its pending proceedings includes the authority to dismiss an attorney who cannot, or will not, take part in them with a reasonable degree of propriety. *Laughlin* v. *Eicher* (D.D.C. 1944), 145 F. 2d 700. Similarly, attorney disqualification can be warranted in cases of truly egregious misconduct which is likely to infect future proceedings.

In *State* v. *Kavanaugh* (1968), 52 N.J. 7, 243 A. 2d 225, the *pro hac vice*

admission of defense counsel was revoked after he wrote a letter to the Governor of New Jersey claiming that the state's case was based on perjured testimony and asked the Governor to intercede therein. Since the attorney distributed the letter to numerous public officials, the court found he intended to reach the mass media and influence prospective jurors, and held that this conduct was sufficient to justify revocation of his permission to appear *pro hac vice*. Another attorney's *pro hac vice* admission was revoked for tampering with evidence. *United States* v. *Madsen, supra.* Thus, a trial court may revoke the *pro hac vice* admission of an attorney who has engaged in egregious misconduct which could taint or diminish the integrity of future proceedings.

A trial court has wide discretion in the exercise of its duty to supervise members of the bar appearing before it. Because the trial court's exercise of its supervisory authority is discretionary, an attorney challenging the revocation of a *pro hac vice* admission must demonstrate that the trial court abused its discretion. *Groper* v. *Taff* (C.A. D.C. 1983), 717 F. 2d 1415, 1418. Our inquiry thus narrows as to whether the trial judge committed an abuse in revoking Cozen's *pro hac vice* admission.

Before making its decision, the trial court gave Cozen an opportunity to respond to J. C. Penney's motion, and held an evidentiary hearing at which the parties had an opportunity to present testimony and exhibits. Uncontradicted evidence before the court showed that the attorneys from Cozen had made several misrepresentations regarding the existence of the documents sought in the subpoenas.[3] The court concluded that "[t]he

---

[3] The first misrepresentation was made by attorney Richard Glazer at the pretrial on January 4, 1985. Glazer's misrepresentation was made part of the record when appellants recapitulated it as follows on page two of a motion for sanctions they filed against J. C. Penney:

"At the Pretrial Conference counsel for Plaintiff, Richard C. Glazer, Esquire, apprised the Court that to the best of his information and belief, after having searched Visconsi's records extensively prior to the institution of the within lawsuit, it was his memory that no such documents existed. Regardless, Plaintiffs willingly agreed to contact the deponents to have them conduct a second thorough search of their records."

Cozen made a second misrepresentation in attorney Robert Meyer's letter to J. C. Penney's counsel dated January 9, 1985 which provides in pertinent part:

"This letter is to advise you that on January 9, 1985 a search of all current and 'archived' documents was concluded with regard to those items outlined in your Subpoena and Deposition Notice Duces Tecum forwarded to the Visconsi Management, Inc., Southland Stores Co., and D. A. Visconsi Company. This extensive search yielded no documents that would be responsive to the material requested."

Notwithstanding Meyer's letter of January 9, 1985, J. C. Penney's counsel believed that responsive documents did exist and insisted that the records depositions of the Visconsi entities go forward. This prompted the third misrepresentation by Cozen, contained in Meyer's letter dated January 18, 1985, wherein he stated in pertinent part:

"I have received and reviewed your correspondence of January 14, 1985. I am extremely dismayed that you refused to accept my word as an attorney as to the availability of certain documents that you seek."

Meyer also had various telephone conversations with J. C. Penney's counsel wherein he

records here clearly establish that the law firm of Cozen, Begier & O'Connor and its members have engaged in conduct involving deceit, with respect to their control after possession of discoverable matter * * *."

Upon review of the evidence, we find that the trial court did not abuse its discretion in revoking Cozen's admission. The evidence is sufficient to support a finding that Cozen purposefully set out to mislead J. C. Penney's counsel about the existence of the requested documents. Such an intentional misrepresentation interferes with opposing counsel's right to obtain discovery of any relevant, non-privileged matter pursuant to Civ. R. 26 and violates an attorney's duty to refrain from engaging in conduct involving deceit. The court could and did properly find that these misrepresentations amounted to egregious misconduct which could taint and diminish the integrity of future proceedings.

Because Cozen's conduct was sufficiently egregious to support disqualification, we need not reach appellants' second proposition of law wherein they contend that *pro hac vice* admissions may be revoked only under the same circumstances that would permit the disqualification of an attorney regularly admitted to practice in the state of Ohio.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, C. BROWN and DOUGLAS, JJ., concur.

---

indicated that responsive documents did not exist and urged that J. C. Penney cancel the records depositions.

On January 22, 1985, the depositions of the Visconsi entities went forward. Meyer presented two records custodians as the designated spokespersons for the Visconsi entities. They testified that they had thoroughly searched their records and that the responsive records did not exist.

On January 25, 1985, Cozen filed a motion for sanctions against J. C. Penney. In this motion, it argued that J. C. Penney was obstructing the judicial process by refusing to believe that no responsive documents existed and stated:

"Despite being assured of the absence of any records that would be responsive to defendant's records deposition, on three occasions, defendant, of its own choice, chose not to believe plaintiffs. * * * When will it all stop? At what point will the Defendants' counsel be satisfied that the records they seek do not exist?"

On January 28, 1985, J. C. Penney took the records deposition of Richard R. Jencen, an architect who had done some work on behalf of some of the Visconsi entities. Jencen produced many documents found to be responsive to the subpoenas which had been served on the Visconsi entities, documents which Cozen had insisted did not exist. In addition, Jencen produced correspondence indicating that he had sent blueprints and other materials to the Visconsi entities and their attorneys. These documents specifically showed that Jencen had sent numerous architectural drawings to Glazer and that Glazer acknowledged receipt of those drawings. Thus, the requested blueprints were in Cozen's files at the time it stated the documents did not exist.