EPISCOPAL RETIREMENT HOMES, INC., APPELLEE, *v.* OHIO DEPARTMENT OF INDUSTRIAL RELATIONS ET AL., APPELLANTS.

[Cite as *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 62 Ohio St.3d 1214.]

(No. 90–1051—Submitted September 23, 1991—Decided December 6, 1991.)

ON MOTION TO VACATE SUA SPONTE REHEARING.

No party has sought a rehearing from our final judgment announced on August 14, 1991. See 61 Ohio St.3d 366, 575 N.E.2d 134. No new argument and no new evidence have been presented to us since the final judgment was announced on August 14, 1991. Accordingly, the motion to vacate the *sua sponte* rehearing ordered on October 8, 1991, in 62 Ohio St.3d 1427, 578 N.E.2d 819, is hereby granted.

MOYER, C.J., HOLMES, WRIGHT and H. BROWN, JJ., concur.

SWEENEY, DOUGLAS and RESNICK, JJ., dissent.

MOYER, C.J., concurring. I write for the sole purpose of clarifying any perception created by a dissenting opinion that the issuance of the "mandate" in this case was anything but regular and according to the practice that is followed in every other case. The dissent asserts: "Indeed, what is irregular and improper is the issuance of a mandate with the original decision." However, nothing irregular occurred because no mandate was in fact issued with the original decision.

It is helpful to know what the practice of the court has been for as many years as anyone can remember. When the court decides a case on the merits, the Clerk's office prepares the mandate at the same time that it prepares the judgment entry. The Chief Justice signs both. Signing the mandate is not the same as issuing the mandate. Issuance of the mandate means to send the mandate or to deliver it to the proper court. Therefore, the fact that a mandate contains the signature of the Chief Justice does not mean that the Chief Justice has issued the mandate. That is a function of the Clerk's office.

Typically, a judgment entry orders the losing party to pay the costs of the action. The trial court enforces the Supreme Court's order regarding pay-

ment of costs. Therefore, in order to put the trial court on notice of the amount of the recoverable costs, these costs are listed on the mandate that will eventually be sent to the trial court rather than on the entry.

When the judgment entry is announced, the Clerk sends certified copies of the judgment entry to the parties. At the same time, the Clerk sends courtesy copies of the mandate to the attorneys for the parties. These copies are stamped "for your information" and are sent solely to apprise the parties of the amount of recoverable costs. This has been the practice for years and years and is followed in every case. The actual mandate is not issued to the trial court at this time but is held by the Clerk's office pursuant to Rule IX of the Supreme Court Rules of Practice.

In accordance with Rule IX, the Clerk issues the mandate ten days after the announcement of the merit decision, unless a motion for rehearing is filed. If a motion for rehearing is not filed within the ten-day time period, the mandate is issued and issuance of the mandate is docketed. If a motion for rehearing is filed within the ten days, the mandate is not issued.

In this case, the mandate was signed by the Chief Justice on August 14, 1991, the same day the judgment entry was signed. The mandate was held by the Clerk's office for ten days pursuant to Rule IX. The motion for rehearing was filed, albeit by an *amicus*, on the last day for such filing under Rule IX. Because a motion for rehearing was filed within the ten-day period permitted by the rule, the Clerk did not issue the mandate. The Clerk acted properly in holding the mandate because the validity of a motion for rehearing by an *amicus* is a question for the court and not the Clerk.

In its memorandum in support of its motion to vacate the rehearing entry, the appellee states that the Supreme Court issued its decision on August 14, 1991 and that the mandate issued on that day. This is incorrect. The mandate was dated August 14, 1991 but was not issued to the trial court on that day and has not yet been issued to the trial court. In accordance with the procedure discussed above, the parties were simply sent courtesy copies of the mandate stamped "for your information" to apprise them of the costs in the case.

The purpose of this explanation is to eliminate any perception that has been created by the dissenting opinion that this case was managed differently than other cases.

HOLMES, J., concurring. This case has evoked much discussion, briefing and opinionating by this court, both as to the merits of the matter and the procedural aspects of the subsequent motions, and *sua sponte* action by this court granting rehearing, now being vacated. I will not add a great deal to

the discussion, but I feel it necessary in concurring with the majority to draw attention to the controlling rules of our court.

Rule IX of the Supreme Court Rules of Practice, which provides for motions for rehearing, clearly implies that it applies only to parties and not to *amici* or friends of the court, who are nonparties. In this instance, there was no motion for rehearing made by a party. The only motion for rehearing was submitted by the Ohio State Building and Construction Trades Council. The Ohio AFL–CIO moved to file a motion for rehearing. Both motions were by strangers to this action, not parties as contemplated by this court's rules of practice.

Also directed to members of this court in support of these motions was a letter from John Hodges, President of the Ohio AFL–CIO. Hodges is also not a party to this action, and has no standing to file a motion for rehearing or a memorandum in support thereof.

There is no specific rule of practice by which this court may *sua sponte* grant a rehearing of a final decision. And, particularly, there is no basis to permit such *sua sponte* action by the court in support of an improper motion for a rehearing filed by a nonparty.

There having been no proper motion for a rehearing of the prior decision of this court, I concur with today's order that the grant of a rehearing on October 8, 1991, be vacated, and that the decision of this court remain as expressed within the opinion announced on August 14, 1991.

DOUGLAS, J., dissenting. Justice Resnick has cogently, systematically and eloquently stated the case for the validity of a majority of this court granting a motion for rehearing in the case now before us. She has laid out the pertinent rule of this court and the court's procedures in such matters and it is difficult to comprehend, after reading her analytical and forthright presentation, how any member of the court can vote to grant a motion to vacate when such a motion has no basis or foundation in our rules. What it boils down to is the "rule of four."

Why then does not the "rule of four" carry the day as to our rehearing vote? That is and will obviously remain a mystery. On October 8, 1991, we announced that "[a] rehearing is granted *sua sponte* as to all issues in this cause. This cause is to be decided on the merit briefs previously filed. No oral argument is to be set." 62 Ohio St.3d 1427, 578 N.E.2d 819. Concurring in this order were Justices Sweeney, Douglas, H. Brown and Resnick—four members of this court.

On October 16, 1991, a "motion to vacate rehearing entry" was filed by appellee. Even though such a motion has no basis in our rules, the "rule of

four" has today prevailed and the motion is being granted. I support the "rule of four" but strongly feel that the rule should have equal, across-the-board application. To say that our vote on October 8, 1991 was somehow tainted but apply a different standard to our vote on the October 16, 1991 motion seems curious, at best.

I fully concur in Justice Resnick's well-reasoned dissent. She has stated the procedural case and the cause is, by rule, properly before us but there is yet another reason why the vote of October 8, 1991 was, and is, completely valid. Obviously, at that time, at least four members of the court thought that the August 14, 1991 decision of this court was in error and was not a proper application of the law. In order to avoid the question of whether an *amicus curiae* may move for a rehearing, a majority voted that the case should be reheard *sua sponte*. *Sua sponte* is defined as "[o]f his or *its* own will or motion; voluntarily; without prompting or suggestion." (Emphasis added.) Black's Law Dictionary (6 Ed.1990) 1424. The question that then seems to arise is whether this court—or any court—has the inherent power to, *on its own motion*, reconsider one of its prior pronouncements.

While *Royal Indemn. Co. v. J.C. Penney Co., Inc.* (1986), 27 Ohio St.3d 31, 27 OBR 447, 501 N.E.2d 617, involved the revocation of a *pro hac vice* admission of an attorney, Justice Wright spoke of a court's inherent power to protect the integrity of its proceedings. *Id.* at 33–34, 27 OBR at 449, 501 N.E.2d at 620. Justice H. Brown, the critical vote to our determination herein, also recognized the inherent power of a court, albeit " * * * to entertain contempt proceedings and punish disobedience * * * " of a court order, in *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho* (1990), 52 Ohio St.3d 56, 61, 556 N.E.2d 157, 163.

What is this seemingly elusive "inherent power"? It is " * * * the power a court possesses as a court; it is the power of a court *qua* court and is not conferred upon the court by constitution, statute, or rule. Accordingly, it is neither conferred by, nor limited by, the court's jurisdiction over the merits of a particular action. * * * " Browne, Evading Sanctions through Voluntary Dismissals (May/June 1991), Ohio Civil Practice Journal 74, 82–83.

The recognition of courts' inherent power certainly is not of recent vintage. As long ago as the July Term, 1788 of the Supreme Court of Pennsylvania the court was wrestling with the question of inherent power. The issue was whether a contempt of court was punishable by attachment. Speaking for the court, Chief Justice M'Kean, in *Respublica v. Oswald* (Pa.1788), 1 U.S. (1 Dallas) 319, 329, 1 L.Ed. 155, 160, said that " * * * not only my brethren and myself, but, likewise, all the judges of England, think, that without this power [inherent power to punish contempt] no court could possibly exist * * * . The

law upon the subject is of immemorial antiquity; and there is not any period when it can be said to have ceased, or discontinued. * * * "

In *Hale v. State* (1896), 55 Ohio St. 210, 213, 45 N.E. 199, 200, this court said:

"The difference between the jurisdiction of courts and their inherent powers is too important to be overlooked. In constitutional governments their jurisdiction is conferred by the provisions of the constitutions and of statutes enacted in the exercise of legislative authority. *That, however, is not true with respect to such powers as are necessary to the orderly and efficient exercise of jurisdiction.* Such powers, from both their nature and their ancient exercise, must be regarded as inherent. * * * Without such power no other could be exercised." (Emphasis added.)

The *Hale* court went on to say that the people, by adopting constitutions, created courts and authorized legislatures to create additional courts. " * * * The courts so created and authorized *have all the powers which are necessary to their efficient action,* or embraced within their commonly received definition. * * * " (Emphasis added.) *Id.* at 214, 45 N.E. at 200.

Both sides cite *Tuck v. Chapple* (1926), 114 Ohio St. 155, 151 N.E. 48, a case involving rehearings and the inherent power of this court. " * * * In the furtherance of justice, it [this court] exercises the jurisdiction to grant rehearings. * * * " *Id.* at 156, 151 N.E. at 49. The case involves a rehearing motion filed during the court's "term" but heard "after term." Such is not the case before us. Here, a determination for rehearing was made and the case would have been reheard "during term." Thus, *Tuck* really stands for the proposition that any rehearing granted (by rule or *sua sponte*) and any decision of the court to set aside or modify one of its judgments "during term" is fully within the power of the court.

Coming now to the bottom line in this case, we find that at least four members of this court say that the opinion of the court in *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 575 N.E.2d 134, is an incorrect statement of the law as it involves the prevailing wage law and R.C. Chapter 140 bonds. Yet, curiously, that opinion stands for the "guidance" of the bench and bar of Ohio. Sometimes truth *is* stranger than fiction!

SWEENEY and RESNICK, JJ., concur in the foregoing dissenting opinion.

ALICE ROBIE RESNICK, J., dissenting. I dissent from the majority's grant of appellee's motion to vacate our rehearing entry dated October 8, 1991, and write in order to clarify a number of matters. The decision in this case was announced on August 14, 1991. A motion for rehearing was filed by *amicus*

*curiae* Ohio State Building and Construction Trades Council on August 26, 1991. The Ohio AFL–CIO, which had not previously participated as an *amicus curiae,* also filed a motion for leave to file a rehearing motion as *amicus curiae.*

Pursuant to Rule IX of the Supreme Court Rules of Practice, a motion for rehearing is to be filed within ten days of the announcement of a decision. In the instant case, the tenth day was August 24, 1991, which was a Saturday. Therefore, the last day on which a motion for rehearing of the case at bar could have been timely filed was Monday, August 26, 1991. See Rule XI of the Supreme Court Rules of Practice. There is no doubt that the motion for rehearing filed by *amicus curiae* Ohio State Building and Construction Trades Council was in fact made in a timely manner.

I feel the issue regarding the propriety of the rehearing motion filed by the *amicus curiae* in this case should be addressed. Rule IX of the Supreme Court Rules of Practice does not on its face require that *a party* be the movant in a motion for rehearing. Rather, Rule IX provides in part:

*"Section 1. Motion for Rehearing.* A motion for rehearing shall be filed within ten days after the announcement of the decision. Such motion must be confined strictly to the grounds urged for rehearing and must not constitute a reargument of the case. Notice of such motion shall be served on opposing counsel who shall have five days to file his [or her] memorandum contra."

Therefore, Rule IX of the Supreme Court Rules of Practice does not mandate that a motion for rehearing be filed by a party to the action. Moreover, the members of the labor union granted *amicus curiae* status by order of this court have a real interest in this case. For example, the Director of the Department of Industrial Relations is charged with enforcing the prevailing wage law in Ohio. See R.C. 4115.10 and 4115.13; and *Harris v. Van Hoose* (1990), 49 Ohio St.3d 24, 550 N.E.2d 461, syllabus (opinion per Justice Herbert Brown): "The Director of the Department of Industrial Relations is authorized, under R.C. 4115.10(C), to enforce prevailing wage claims on behalf of all employees who do not pursue their claims through R.C. 4115.10(A) or (B)." The *amicus curiae* asserts that because the Department of Industrial Relations was satisfied with the original decision in this case and chose to rely on the ruling and not seek rehearing of the case, the members of the labor union would have no avenue for aggressively asserting their rights except by filing a motion for rehearing on their own. Because there is no prohibition in the express language of Rule IX of the Supreme Court Rules of Practice, and because the *amicus curiae* has a real interest in this case, this court could properly consider the merits of the motion for rehearing filed by *amicus curiae.*

Rather than address the propriety of *amicus curiae's* right to file a motion for rehearing, a majority of this court chose to exercise its inherent authority to correct a miscarriage of justice and proceed to *sua sponte* rehear the case. That decision was not improper or irregular. Indeed, what is irregular and improper is the issuance of a mandate with the original decision. While this practice is apparently employed by this court on a regular basis, it is totally unauthorized by Rule IX of the Supreme Court Rules of Practice, and misleading to the parties.

Counsel for appellee states that a "mandate" was received from this court at the same time that the decision was received. In fact, attached to appellee's motion to vacate the rehearing order is a document that purports to be a mandate signed by the Chief Justice. Yet, a review of the record in this case reveals that the *Clerk* of this court never issued a mandate pursuant to Rule IX of the Supreme Court Rules of Practice. Rule IX provides in pertinent part:

"*Section 2. Issuance of Mandate. Ten days after* the announcement of a decision on the merits, unless a motion for rehearing is filed, *the Clerk shall* issue a mandate in conformity to the entry of the Court. If a motion for rehearing is filed and denied, the mandate shall issue at the same time as the decision on the motion for rehearing. * * *" (Emphasis added.)

The Supreme Court Rules of Practice do not authorize a "courtesy copy" of a mandate to be issued by the Chief Justice at the time of the announcement of the decision. Rather, the clear language of Rule IX requires that the *Clerk* of this court issue the mandate, not the Chief Justice. Moreover, the mandate should be issued ten days *after* the announcement of this court's decision and *only* in the absence of a timely motion for rehearing. In the present case, a motion for rehearing was filed within the ten-day time limit set forth in Rule IX of the Supreme Court Rules of Practice. This court could have either granted or denied the motion for rehearing, but instead a majority of this court chose to *sua sponte* rehear the case. No valid or effective mandate could have been issued by the Clerk of this court prior to October 8 because a motion for rehearing was indeed pending. Since a mandate could not validly be issued this court clearly and unequivocally had jurisdiction to act. See *Rocky River v. State Emp. Relations Bd.* (1989), 41 Ohio St.3d 602, 603–604, 535 N.E.2d 657, 658 (H. Brown, J., concurring). Indeed, appellee agrees that this court has jurisdiction and states in its brief filed with this court on November 4, 1991, that "[a]ppellee does not contend and did not argue in its Memorandum in Support of Motion to Vacate Rehearing Entry, that this Court is without jurisdiction to rehear a decision *sua sponte.* Rather, it is appellee's position, fully supported by the prior decisions of this Court, that

this Court's jurisdiction to rehear a decision, whether upon motion of a party or *sua sponte,* is limited and cannot be exercised once a decision has become final." Thus, our order to *sua sponte* rehear this case was totally proper because even to this day no mandate has been issued in this case by the Clerk in accordance with Rule IX and because the court had before it a viable motion for rehearing. Any reliance on the finality of our decision by either the parties or the general public was premature, particularly since a motion for rehearing was pending. Until the court ruled on this motion for rehearing, our decision of August 14 was subject to modification by a majority of this court. This conclusion is true of any case in which a motion for rehearing is filed, and should be no surprise given Rule IX and the volume of motions for rehearings filed in this court.

Rule IX of the Supreme Court Rules of Practice does not, on its face, require that *a party* be the movant in a motion for rehearing. The mandate issued in this case by the Chief Justice was a nullity since there was a motion for rehearing filed by the Ohio State Building and Construction Trades Council as *amicus curiae.* I adhere to the belief that this court possesses inherent authority to correct a miscarriage of justice and should do so in a timely manner. The citizens, the bench and the bar of Ohio cannot afford the luxury of waiting for another case identical to this one to come before us. For all the above reasons, I dissent.

SWEENEY and DOUGLAS, JJ., concur in the foregoing dissenting opinion.