MUSA et al., Appellees,

v.

**GILLETTE COMMUNICATIONS OF OHIO, INC.
et al.; Better Business Bureau, Appellant.**

[Cite as *Musa v. Gillette Communications of Ohio, Inc.* (1994), 94 Ohio App.3d 529.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65045.

Decided May 2, 1994.

**530**

*Jalil Ibn Musa,* pro se.

*Jeffrey W. Van Wagner,* for James M. Sutter.

*Michael T. McMenamin* and *Frederick W. Whatley,* for appellant.

PRYATEL, Judge.

Appellant, Better Business Bureau, appeals from the order of the trial court disqualifying attorney Frederick W. Whatley and the law firm Walter, Haverfield, Buescher & Chockley from representing it. For the reasons set forth below, we reverse and remand.

## I

Appellee, Jalil Ibn Musa, commenced case No. 173894 on August 4, 1989, seeking damages against appellant, appellant's employee James M. Sutter, Gillette Communications and various employees of WJW–TV. Appellee alleged that appellant, Sutter and Gillette made a false and libelous television report concerning various businesses owned by appellee. Appellee further alleged that Sutter investigated appellee while in the scope and course of his duties with appellant. That case was dismissed by the trial court without prejudice for appellee's failure to comply with numerous discovery requests.

The case *sub judice* was commenced again on February 11, 1991 against the same defendants alleging identical damages. Once again appellee alleged that the acts of Sutter were committed while in the course and scope of his employment with appellant, which appellant and Sutter do not deny.

The law firm of Walter, Haverfield, Buescher & Chockley, and specifically attorney Frederick W. Whatley of that firm, represented all defendants in this matter.

Allegations have been made that on June 12, 1992, Sutter on his own met with appellee's counsel to discuss discovery matters. Appellee's counsel thereafter withdrew from the case, and Whatley withdrew as counsel for Sutter. Further, appellant moved for a protective order limiting the scope of deposition of Sutter to exclude discussions between Sutter and appellee's counsel.

On June 27, 1992, Sutter, *pro se,* filed a motion in opposition to appellant's motion for protective order. In that motion, Sutter alleged that Walter, Haverfield, Buescher & Chockley committed an unethical act concerning discovery matters while they represented him. Sutter, however, withdrew that motion on July 14, 1992.

On June 30, 1992, the law firm of Ulmer & Berne made its appearance on behalf of Sutter.

On July 6, 1992, appellee Musa, *pro se,* moved to disqualify Whatley and Walter, Haverfield, Buescher & Chockley from representing all defendants on the basis of Sutter's allegations in the June 27, 1992 *pro se* motion (which Sutter withdrew on July 14, 1992).

On September 2, 1992, Sutter, through counsel, moved for a protective order prohibiting appellee from questioning Sutter concerning his relationship with Whatley and Walter, Haverfield, Buescher & Chockley, and the allegations he made against them. That motion was denied by the trial court.

Thereafter, the partial deposition of Sutter was taken by appellee and appellant. No objection to the attendance of Whatley at that deposition appears in the record. The deposition was adjourned, and reconvened on December 3, 1992. At that time, appellee moved for a protective order prohibiting Whatley from questioning Sutter, and to disqualify Whatley as counsel for all defendants on the basis of a possible violation of the Code of Professional Responsibility. Nevertheless, Whatley questioned Sutter without further objection.

On December 14, 1992, appellant filed a brief opposing appellee's motion for protective order and for disqualification. Appellant then supplemented that brief on January 11, 1993. In the supplemental brief, appellant provided copies of the following documents:

(1) letter from Sutter's counsel to Whatley indicating that no improper questions were asked by Whatley at Sutter's deposition.

(2) letter from Sutter's counsel to trial court expressing Sutter's feeling that his defense will be prejudiced by disqualification of Whatley as his and appellant's interests are identical.

(3) affidavit of Sutter waiving all conflicts of interest between himself and Whatley.

On January 15, 1993, the trial court on its own issued an order disqualifying Whatley and Walter, Haverfield, Buescher & Chockley from representing appellant and ruled:

"This court further finds that Plaintiff has taken the deposition of Defendant Sutter, such deposition having commenced on September 4, 1992, and having been continued to December 3, 1992; and that prior to the continued deposition of December 3, 1992, when it was anticipated that Mr. Whatley would be cross-examining Defendant Sutter, his former client, Plaintiff filed a Motion for a Protective Order to prohibit Mr. Whatley from examining Defendant Sutter on the ground that the potential for an ethical violation existed if he were to conduct such examination of Defendant Sutter. Specifically, a violation of the following ethical consideration of the Code of Professional Responsibility could occur in such case:

" 'A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client and a lawyer should not use, except with the consent of his client after full disclosure, such information for his own purposes * * *.' *Ethical Consideration* EC4-[5].

"This Court further finds that, based on the potential for harm to his former client as a result of information, knowledge and disclosures which would have been made to Mr. Whatley during the time their attorney-client relationship existed, the Motion for a Protective Order filed by Plaintiff on December 3, 1992 should have been granted, and this Court will intervene at this point to disqualify Mr. Whatley and his firm from further representation of Defendant Better Business Bureau in order to prevent the possibility of an ethical violation from occurring in the subsequent course of this litigation."

Nowhere in the court's order does it actually indicate that the court reviewed the deposition of Sutter, specifically Whatley's questioning of Sutter.

This appeal follows that ruling.

## II

For its sole assignment of error, appellant contends that the trial court erred in disqualifying Frederick W. Whatley and Walter, Haverfield, Buescher & Chockley from further representing it in this case.

■ A trial court has the "inherent power to regulate the practice before it, and protect the integrity of its proceedings," which includes the " 'authority and duty to see to the ethical conduct of attorneys in proceedings' " before the court. *Royal Indemn. Co. v. J.C. Penney Co.* (1986), 27 Ohio St.3d 31, 33–34, 27 OBR 447, 449, 501 N.E.2d 617, 620. Under appropriate circumstances, an attorney may be disqualified from continued participation in ongoing litigation in the event of truly egregious misconduct which is likely to infect future proceedings. *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 259, 31 OBR 459, 461–462, 510 N.E.2d 379, 381–382; *Maple Hts. v. Redi Car Wash* (1988), 51 Ohio App.3d 60, 61, 554 N.E.2d 929, 930–931.

■ A trial court has great discretion in supervising the conduct of members of the bar practicing before it, and a court's ruling on such matters will not be disturbed absent a showing that the court abused that discretion. See *Royal Indemn., supra,* 27 Ohio St.3d at 35–36, 27 OBR at 450–451, 501 N.E.2d at 620–622.

Concerning this abuse of discretion standard, the Ohio Supreme Court stated in *AAAA Ent., Inc. v. River Place* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 601, that:

" 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. * * * It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

"A decision is unreasonable if there is no sound reasoning process that would support that decision."

■ In sifting information presented to it, a trial court should bear in mind that disqualification is a drastic measure. In fact, a violation of the Code of Professional Responsibility alone should not result in disqualification unless disqualification is found to be absolutely necessary. *Centimark Corp. v. Brown Sprinkler Serv.* (1993), 85 Ohio App.3d 485, 488–489, 620 N.E.2d 134, 136–137; accord *Gould, Inc. v. Mitsui Mining & Smelting Co.* (N.D.Ohio 1990), 738 F.Supp. 1121. Certainly, more is required than a mere allegation of an ethical violation. *Centimark, supra;* accord *Kitchen v. Aristech Chem.* (S.D.Ohio 1991), 769 F.Supp. 254.

■ Appellant's primary contention is that there was no present conflict of interest between Whatley and Sutter. We agree. Information before the court at the time of its ruling included (1) admissions by all parties that *any* action taken by Sutter against appellee occurred while in the scope and course of his employment with appellant, thus making the interests of Sutter and appellant identical, (2) a complete waiver by Sutter of any conflict of interest concerns, (3)

information in Sutter's attorney's letter that no improper questions were asked of Sutter by Whatley, and (4) evidence that Sutter withdrew his accusation of unethical conduct.

Nor will the mere allegations of ethical violations, not supported by the record, justify drastic action.

Finally, a protective order, if needed, would have served the court's purpose in limiting disclosure of confidences.

We conclude that the trial court's ruling disqualifying Whatley and Walter, Haverfield, Buescher & Chockley was not absolutely necessary, and for the court not to take into account undisputed documents filed with the court was an abuse of that court's discretion.

Appellant's assignment of error is sustained.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PATTON, P.J., concurs.

NUGENT, J., concurs separately.

AUGUST PRYATEL, J., retired, of the Eighth Appellate District, sitting by assignment.

NUGENT, Judge, concurring.

While I fully concur in the majority's decision to reverse the trial court's order which disqualified appellant's counsel, I write separately to set forth my view that the instant order is a final, appealable order.

Section 3(B)(2), Article IV of the Ohio Constitution provides appellate courts with jurisdiction over final orders. A final order is defined, in pertinent part, as "an order affecting a substantial right made in a special proceeding." There is no doubt that at the time the trial court's order was journalized, such order constituted a final, appealable order. *Russell v. Mercy Hosp.* (1984) 15 Ohio St.3d 37, 15 OBR 136, 472 N.E.2d 695; *Centimark Corp. v. Brown Sprinkler Serv., Inc.* (1993), 85 Ohio App.3d 485, 620 N.E.2d 134. However, after appellant had perfected its appeal with this court, the Ohio Supreme Court issued its decision in *Polikoff v. Adam* (1993), 67 Ohio St.3d 100, 616 N.E.2d 213. *Polikoff* overruled *Amato v. Gen. Motors Corp.* (1981), 67 Ohio St.2d 253, 21 O.O.3d 158, 423 N.E.2d 452, which applied a balancing test to determine whether an order is one which affects a substantial right made in a special proceeding. Because the

Ohio Supreme Court's decision in *Russell* applied the *Amato* balancing test, the issue of whether an order disqualifying opposing counsel in a civil action constitutes a final, appealable order must be re-examined.

In *Polikoff*, the Ohio Supreme Court perceived the *Amato* balancing test as leading to disparate results and, therefore, returned to a more historic approach to determining whether an order was entered in a special proceeding. Accordingly, the Supreme Court held that "[o]rders that are entered in actions that were recognized at common law or in equity and were not specially created by statute are not orders entered in special proceedings pursuant to R.C. 2505.02." *Id.* at syllabus.

In reaching its holding in *Polikoff*, the Supreme Court applied the following two-pronged test: First, the court asked whether the underlying action was recognized in equity, at common law, or established by special legislation. Next, the court looked to the nature of the relief being sought. The court noted that "[t]his is not a case wherein the aggrieved party filed a special petition seeking a remedy that was conferred upon that party by an Ohio statute *nor* is it a proceeding that represents what is essentially an independent judicial inquiry." *Id.*, 67 Ohio St.3d at 107, 616 N.E.2d at 218, citing *In re Estate of Wyckoff* (1957), 166 Ohio St. 354, 357–358, 2 O.O.2d 257, 259–260, 142 N.E.2d 660, 663, 664. The Supreme Court further considered that "[i]n examining the ultimate reviewability of the order, we find that the facts needed to analyze this precise issue will be unchanged by the ultimate disposition of the underlying action. The question of whether appellees complied with Civ.R. 23.1 will be preserved throughout this litigation." *Polikoff*, 67 Ohio St.3d at 107, 616 N.E.2d at 218. Finally, the court distinguished a special petition from the underlying action in that the underlying action arises from the pleadings on questions of law and fact and results in a judgment for the prevailing party.

Thus, notwithstanding the apparent sweeping language of the syllabus in *Polikoff*, an order may still be final and appealable when entered in an action recognized at common law or at equity if the "aggrieved party filed a special petition seeking a remedy that was conferred upon that party by an Ohio statute or [if it is] a proceeding that represents what is essentially an independent judicial inquiry." *Id.*

In fact, the Supreme Court appears to have recognized this principle in its decision in *Bell v. Mt. Sinai Med. Ctr.* (1993), 67 Ohio St.3d 60, 616 N.E.2d 181, decided the same day as *Polikoff*. In *Bell*, the Supreme Court concluded that a motion for prejudgment interest pursuant to R.C. 1343.03(C) in an underlying medical malpractice action constitutes a special proceeding inasmuch as the right to obtain such relief, *i.e.*, prejudgment interest, is purely statutory in nature and was unavailable at common law.

This court has also recognized that an order entered in a motion proceeding in an action recognized at common law may nonetheless constitute a special proceeding. Thus, a motion for a protective order asserting a statutory privilege against disclosure of HIV test results or diagnosis (a privilege unavailable at common law) is a special petition which seeks a remedy conferred by statute and is a proceeding which represents what is essentially an independent judicial inquiry. *Arnold v. Am. Natl. Red Cross* (1994), 93 Ohio App.3d 564, 639 N.E.2d 484. Similarly, the First District Court of Appeals has concluded that it is the nature of the privilege, not the underlying cause of action, which must be examined. *Niemann v. Cooley* (1994), 93 Ohio App.3d 81, 637 N.E.2d 943. In *Niemann,* the court of appeals concluded that an order compelling production of documents is one made in a special proceeding where all the privileges asserted were statutory in nature. *Id.* at 84–85, 637 N.E.2d at 945–946.

Since *Polikoff,* the question presented in the case *sub judice* has been explored by the Second District Court of Appeals in *Stevens v. Grandview Hosp. & Med. Ctr.* (Oct. 20, 1993), Montgomery App. No. 14042, unreported, 1993 WL 420127. In *Stevens,* the court of appeals held "that the granting of a motion to disqualify counsel is a final appealable order pursuant to R.C. 2505.02 even though it appears to fly in the face of the syllabus of the *Polikoff* case. We are relying on the reasoning set forth by the Supreme Court in *Polikoff,* which we recited earlier in this opinion, pursuant to the ultimate reviewability of the order and that it represents 'what is essentially an independent judicial inquiry.'" *Id.* at 5–6.

At first glance, the Second District Court of Appeals' decision in *Stevens* would appear to be at odds with this court's decision in *State v. Keenan* (Jan. 14, 1994), Cuyahoga App. No. 66264, unreported, 1994 WL 24257. In *Keenan,* this court concluded that an order granting a motion to disqualify court-appointed counsel in a criminal proceeding is not an order made in a special proceeding. *Id.* However, this court was persuaded by the United States Supreme Court's decision in *Flanagan v. United States* (1984), 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288, which ruled that disqualification orders in criminal cases were not immediately appealable. This court followed the Supreme Court's reasoning that the constitutional requirement of speedy adjudication in criminal matters, as well as the practice of moving to disqualify counsel in civil cases as a delaying tactic, could justify different results. *Keenan* thus recognized a trial court's inherent authority to control the court's docket in criminal matters in order to assure an accused's constitutional right to a speedy trial.

*Keenan* should also be read to recognize a trial court's inherent authority over counsel who appear before it in criminal matters. It cannot be disputed that a trial court maintains responsibility to criminal defendants to assure competent and effective representation in criminal proceedings. *Strickland v. Washington*

(1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Hester* (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304; *State v. Lytle* (1976), 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623. Thus, it is clearly the trial court's responsibility in criminal proceedings to remove counsel when it appears that there has been a breakdown in the attorney-client relationship so as to jeopardize the defendant's right to effective assistance of counsel. *State v. Coleman* (1988), 37 Ohio St.3d 286, 292, 525 N.E.2d 792, 798–799; *State ex rel. Kura v. Sheward* (1992), 75 Ohio App.3d 244, 598 N.E.2d 1340. A trial court's authority over appointed counsel, as in *Keenan,* would appear to be more profound than its control over retained counsel.

Additionally, a trial court's decision to disqualify counsel in a criminal matter can be reviewed after final judgment on direct appeal through a claim of ineffective assistance of counsel. See *Hester, Lytle,* and *Coleman, supra.* To the contrary, there is no constitutional right to effective assistance of counsel in civil proceedings. As such, an injured party's remedy for inefficient legal counsel is, generally, against the attorney in a suit for malpractice. *GTE Automatic Elec., Inc. v. ARC Industries* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113. Accordingly, the effects of disqualifying retained counsel in a civil proceeding cannot be measured after judgment on appeal from the action.

Finally, this is not a case where a motion to disqualify opposing counsel has been denied. Thus, there is no conflict with the Supreme Court's decision in *Bernbaum v. Silverstein* (1980), 62 Ohio St.2d 445, 16 O.O.3d 461, 406 N.E.2d 532. In *Bernbaum,* the Supreme Court concluded that an order denying the defendant's motion to disqualify plaintiff's counsel brought on grounds that plaintiff's counsel once represented the defendant and might disclose defendant's confidences was not final and appealable. The court concluded that allegations of disclosures of confidences, if proven, could constitute reversible error on appeal from judgment in the main action. *Id.* at 448, 16 O.O.3d at 463–464, 406 N.E.2d at 535. However, as previously stated, I cannot conclude that the effects of disqualifying counsel can be measured after judgment on appeal from the main action. Moreover, the costs which an aggrieved party would likely incur in having to obtain new counsel must be recognized in distinguishing *Bernbaum* from the case *sub judice.*

Therefore, based on the foregoing, I conclude that an order disqualifying counsel in a civil action is an order which affects a substantial right made in a special proceeding. In reaching this conclusion, I rely on that portion of the Supreme Court's opinion in *Polikoff* which defines a special proceeding as one in which the aggrieved party has filed a special petition, *i.e.,* a motion, which requires the trial court to engage in "what is essentially an independent judicial inquiry." Additionally, the question raised by the independent judicial inquiry is

separate and apart from the issues of law and fact which arise from the pleading, and resolution of which will not result in a judgment for the prevailing party. Finally, as distinguished from *Keenan* and *Bernbaum*, it is impossible to conclude that this court will be able to measure the effects of disqualifying counsel after final judgment.

Having concluded that the order *sub judice* is final and appealable, I concur in the majority's decision to reverse.