[Cite as *Nationwide Children's Hosp.*, 2016-Ohio-4556.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Heather Casper, Individually and as Administrator of the Estate of Caroline E. Casper, Deceased, | : | |
| | : | |
| Plaintiff-Appellee, | : | No. 15AP-997 (C.P.C. No. 13CV-10083) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Nationwide Children's Hospital, et al. | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 23, 2016

**On brief:** *Donahey, Defossez & Beausay, Mark E. Defossez* and *Jacob J. Beausay,* for appellee. **Argued:** *Jacob J. Beausay.*

**On brief:** *Vorys, Sater, Seymour and Pease, LLP, Theodore P. Mattis, J. Scott Jamieson,* and *Angelyne E. Lisinski,* for appellant. **Argued:** *Theodore P. Mattis.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Nationwide Children's Hospital ("Children's Hospital"), appeals a decision of the Franklin County Court of Common Pleas which granted pro hac vice admission to an out-of-state attorney, Geoffrey N. Fieger, and allowed him to enter an appearance on behalf of plaintiff-appellee, Heather Casper. Also at issue in this decision is a motion to dismiss this appeal, filed by Casper, on the grounds that the order granting pro hac vice admission is not an appealable order and that this Court therefore lacks jurisdiction. Because we conclude that the order granting pro hac vice admission was indeed not a final appealable order, this Court lacks jurisdiction and we must dismiss without considering the merits of admitting Fieger pro hac vice.

No. 15AP-997

## I.  PROCEDURAL POSTURE

{¶ 2}   On September 10, 2013, Casper filed a lawsuit against Children's Hospital and Richard E. Gorman, M.D. alleging generally that medical negligence by Gorman and employees of Children's Hospital resulted in the suffering and death of her seven-year-old daughter, Caroline E. Casper.  Both Children's Hospital and Gorman timely answered the complaint, the hospital on September 19, and Gorman on September 25, 2013.

{¶ 3}   On September 2, 2015, approximately three months before the scheduled December trial date, Geoffrey N. Fieger, an out-of-state attorney, filed a motion seeking leave to appear pro hac vice on behalf of Casper.  Eight days later, the trial court, without waiting the full response period to see if the defendants would oppose the motion, granted it.  Four days after that, on September 14, 2015, Children's Hospital filed a memorandum in opposition, a motion to vacate the entry, and a request for reconsideration. Procedurally, Children's Hospital noted that they had not been given an appropriate chance to be heard before the motion was granted.  Substantively, Children's Hospital produced a rather extensive series of cases in which courts have described Fieger's trial demeanor and tactics as unprofessional.  This recitation included a decision by the Supreme Court of Ohio where a $30 million plaintiff's verdict was reversed and remanded for a new trial in part because of an evidentiary error by the trial court and in part "because the verdict was given under the influence of passion or prejudice and tainted by misconduct of counsel [Fieger]." *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, ¶ 7, 46.

{¶ 4}   In an entry filed on September 21, 2015, the trial court explained that pro hac vice motions are routinely granted without opposition and that it had, on that basis, granted the motion without waiting for the expiration of the 14-day response period set forth by Loc.R. 21.01 of the Franklin County Court of Common Please, General Division. However, when Children's Hospital took the somewhat unusual step of seeking to oppose the motion, the trial court recognized that Children's Hospital had not had an appropriate opportunity to be heard on the issue, vacated its prior entry, and scheduled a hearing on the matter for September 30, 2015.

{¶ 5}   At the hearing, counsel for both Children's Hospital and Casper presented arguments, and Fieger appeared and discussed previous alleged behavioral issues.  Fieger essentially denied past wrongdoing in contradiction of the materials Children's Hospital

quoted in its motion. At the close of the hearing, the trial court stated on the record that it had concerns about Fieger's past conduct and orally warned both Fieger and local counsel that breaches of professionalism and courtroom decorum would not be tolerated. But the trial court, in balancing the danger of such disruption against the plaintiff being able to choose her own counsel, decided to grant the motion and admit Fieger on a pro hac vice basis. The trial court filed an entry on September 30, 2015, admitting Fieger pro hac vice.

{¶ 6} Children's Hospital timely appealed. Shortly after the appeal was docketed, Casper filed a motion on November 5, 2015 to dismiss on the grounds that the trial court's entry admitting Fieger pro hac vice was not an appealable order at this juncture and that the court of appeals, therefore, lacks jurisdiction. Then, on November 30, 2015, Casper filed a motion to stay briefing on the merits. This Court denied the briefing stay on December 3, 2015 and determined to address the jurisdictional issues at the same time as the merits. Both the motion and the merits are now fully briefed and have been argued.

## II. JURISDICTION

{¶ 7} Before reaching the merits or the assignments of error proffered by Children's Hospital, we must consider whether this Court has jurisdiction. The Ohio Constitution sets forth a basic limit on the jurisdiction courts of appeals in Ohio:

> Courts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse *judgments or final orders* of the courts of record inferior to the court of appeals within the district[.]

(Emphasis added.) Ohio Const., Article IV, Sec. 3(B)(2). Thus the question is whether the decision to allow Fieger to appear pro hac vice is a "judgment or final order[]." *Id.*

{¶ 8} The Ohio Legislature has enacted a statute refining the question further. That statute provides, in relevant part:

> (B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
>
> * * *
>
> (4) An order that grants or denies a provisional remedy and to which both of the following apply:
>
> (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action

No. 15AP-997

> in favor of the appealing party with respect to the provisional remedy.
>
> (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

R.C. 2505.02.

{¶ 9} In this case, the trial court's order permitting Fieger to appear pro hac vice and the trial court's discussion of the matter specifically contemplated the possibility that he might later be removed if he demonstrated the sort of behavior that caused Children's Hospital to oppose his presence in the first place. That is, the trial court stated on the record:

> I won't tolerate any misconduct. I do have some concerns about what —— what's happened in the past. But I do also believe that, in laying the balancing between whether to admit Mr. Fieger or deny his admission, I do give deference to the wishes of the plaintiff in choosing their own counsel.
>
> And so make no mistake, if anything happens in trial, I have no qualms about explaining to a jury why you started the trial and didn't finish it. Okay? I will absolutely tell them exactly why if anything gets out of hand, but I trust you will conduct yourself professionally and with respect to this court.

(Sept. 30, 2015 Tr. at 27.) Then, in the written order it remarked:

> [T]he Court notes various courts throughout the country have documented prior questionable conduct exhibited by Mr. Fieger. The Court will not tolerate inappropriate argument during trial, disrespect toward opposing counsel, and conduct contrary to the degree of professionalism expected of each and every lawyer who appears before this Court. There is a fine line between zealous advocacy and unethical conduct. If Mr. Fieger should cross that line in this case, the Court will take appropriate remedial action.

(Sept. 30, 2015 Entry Granting Pro Hac Vice at 1.)

{¶ 10} The trial court's decision to explicitly leave the matter of Fieger's participation open to further review is no mere facade; it is within the power of the trial court to later revoke Fieger's pro hac vice status if it deems it appropriate to do so. *See Royal Indemn. Co. v. J.C. Penney Co.*, 27 Ohio St.3d 31, 34-35 (1986) (permitting revocation of pro hac vice status when the trial court determines within its "power to

regulate the practice before it and protect the integrity of its proceedings" that an attorney "cannot, or will not, take part in [proceedings] with a reasonable degree of propriety"). Thus, granting permission to appear pro hac vice is not, on the facts of this case, a decision that "prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy" because it can later be revisited by the trial court. R.C. 2505.02(B)(4)(a); *see also Wilhelm-Kissinger v. Kissinger*, 129 Ohio St.3d 90, 2011-Ohio-2317, ¶ 10-11 (denial of a motion to disqualify counsel is subject to reconsideration from time to time and thus lacks the permanent effect of an order granting disqualification).

{¶ 11} Children's Hospital argues that the foregoing conclusion is inaccurate because the standard of revoking pro hac vice status is different from the standard by which it is granted in the first place. Thus, the decision cannot be "revisited" because if it is, it will not be the same decision. *Id.* This may be true as a legal abstraction. However, in this case, the grounds for opposing Fieger's pro hac vice admission and potential grounds for later revoking it are essentially the same—that Fieger may engage in unprofessional misconduct and taint the trial. That concern would have been an appropriate reason to deny the pro hac vice application in the first place (had the trial court chosen to exercise its discretion to do so). If such conduct eventuates and the trial court decides that Fieger's conduct has become unprofessional, there will exist a reason analogous to that considered for his admission for the trial court to revoke his pro hac vice application. *Royal Indemn. Co.* at 34-35. Since the trial court expressly left open the possibility of revoking his application, we are unable to say that R.C. 2505.02(B)(4)(a) is satisfied.

{¶ 12} Even assuming, arguendo, that the trial court's decision satisfied R.C. 2505.02(B)(4)(a), it is unlikely that R.C. 2505.02(B)(4)(b) would also be satisfied. Whether Fieger should have been allowed to participate pro hac vice is more easily reviewable after trial and final judgment than at an interlocutory phase of the trial, since an appellate court would be able to ascertain whether Fieger behaved appropriately or not before, during, and after the trial. At the present moment, even were we to find error in the trial court's decision to extend pro hac vice admission to Fieger, what prejudice could we ascribe to that error? Civ.R. 61. How could we hold that it was anything other than

No. 15AP-997

harmless at this stage, before any harm is done and without anything more than speculation that harm will come to pass?

{¶ 13} Although this Court has not ruled on whether a grant of pro hac vice status is immediately appealable, it has held that a denial of pro hac vice status is immediately appealable, and we find the reasoning in such cases to be instructive. *Martinez v. Yoho's Fast Food Equip.*, 10th Dist. No. 00AP-441 (Dec. 19, 2000). In reaching the conclusion in *Martinez* that a *denial* of pro hac vice status is immediately appealable, we quoted the Supreme Court and reasoned "that delaying the review of orders disqualifying counsel would 'in most instances be irreparable,' given the difficulty in demonstrating prejudice upon appeal even if the order were found to be in error." *Id.,* quoting *Russell v. Mercy Hosp.*, 15 Ohio St.3d 37, 41 (1984). We explained that, " 'the argument in most cases would quickly degenerate into speculation and hindsight' requiring the reviewing court to decide 'whether and how the original counsel might have handled the matter differently.' " *Id.,* quoting *Russell* at 40. By contrast, in a case such as this where counsel of choice is permitted to participate, the reasoning set forth in *Martinez* and *Russell* supports the opposite result. That is, only after full trial of this matter, will it be apparent whether or not Fieger indeed behaved unprofessionally, and thus, only after trial will it be apparent (without the need for speculation), whether the pro hac vice decision resulted in prejudice. And, of course, if prejudice indeed resulted, a remedy exists; a new trial could then be ordered in which Fieger could be prevented from participating.

{¶ 14} Children's Hospital argues that if Fieger is permitted to represent Casper, it will, by virtue of his reputed and expected tactics, suffer irreparable damage to its reputation, which will not be able to be undone by any subsequent appeal. While we appreciate that there are a number of very unflattering descriptions of Fieger's tactics in past cases (including from the Supreme Court), and Fieger's explanation of his past activities may not be particularly compelling, the concern Children's Hospital posits is too speculative to support a reversal in this case. According to Children's Hospital's argument we would have to assume that (1) Fieger will disregard the trial court's oral and written warnings that unprofessional conduct will not be tolerated and that he will engage in unprofessional tactics, (2) that when he does, the trial court, despite indicating that it would stop him (possibly by revoking his pro hac vice status), will fail to stop him, (3) that

No. 15AP-997

Fieger's tactics will seek to attack the reputation of the hospital, (4) that the tactics will be made public in some way, and (5) that they will successfully damage Children's Hospital's reputation with the public. Even assuming, arguendo, that Fieger intends to behave as poorly as Children's Hospital fears and that such behavior would affect their reputation, it is not rational to assume that the trial court will act inappositely to its entry and permit Fieger to engage in unprofessional tactics or that it will not use its authority to remove him from the case if he does. The trial court explicitly warned that it will strictly curtail such behavior if it occurs. It would be inappropriate for us to do anything other than take the trial court at its word.

{¶ 15} In short, several cases stand for the proposition of law that decisions preventing parties from proceeding with their chosen counsel are immediately appealable. *Guccione v. Hustler Magazine, Inc.*, 17 Ohio St.3d 88 (1985), syllabus; *Russell* at syllabus; *Spitz v. St. Luke's Med. Ctr.*, 8th Dist. No. 88184, 2007-Ohio-1448, ¶ 9; *Westfall v. Cross*, 144 Ohio App.3d 211, 214 (7th Dist.2001); *Martinez*. Conversely, however, other cases demonstrate that decisions allowing a party to proceed with their choice of counsel are not immediately appealable. *Wilhelm-Kissinger* at ¶ 8-11; *Swearingen v. Waste Technologies Indus.*, 134 Ohio App.3d 702, 709 (7th Dist.1999). Denial of choice of counsel has different consequences and is less reviewable on later appeal than is a decision allowing a party its choice of counsel. As the decision Children's Hospital attempts to appeal here is the latter rather than the former, it is not immediately appealable and we lack jurisdiction to consider the matter further.

## III. CONCLUSION

{¶ 16} The decision to allow Casper her choice of counsel and to permit Fieger to appear pro hac vice is not final, and it is one that can and should be subject to modification by the trial court if Fieger's conduct is anything other than professional. It is reviewable on appeal following final judgment, and consequently, it is not reviewable now. This court lacks jurisdiction and this appeal should be, and now is, dismissed.

*Appeal dismissed.*

TYACK and LUPER SCHUSTER, JJ., concur.

––––––––––